## I M'Dowell *against* Simpson.

An agent is a competent witness to prove his own authority.

A lease of land in writing for seven years, by an authorized agent, may be ratified by the owner; but to avoid the effects of the statute of frauds and perjuries, that ratification must be in writing; a parol ratification gives to the tenant an estate at will, and if it continue more than one year, an estate from year to year, of which he cannot be dispossessed, but upon having received three months notice to quit.

| | |
|---|---|
| 3w 129 | |
| 146 162 | |

| | |
|---|---|
| 3 W | 129 |
| 22 SC | 621 |

| | |
|---|---|
| 3 W | 129 |
| e209 | ²552 |

| | |
|---|---|
| 3w | 129 |
| 39SC | ·587 |

ERROR to the common pleas of *Alleghany* county.

This was an ejectment for part of lot No. 219, on Wood street, in the city of Pittsburgh. The plaintiff, Andrew N. M'Dowell and wife, claimed to recover the possession of the property, as heirs of William Porter deceased, by virtue of certain proceedings in partition, in the common pleas of Alleghany county, instituted on the 17th of August 1829, and perfected on the 25th of April 1831, between them and the other heirs of William Porter, viz. Alexander Brackenridge and wife, Samuel Smith and wife, and William A. V. Magaw and wife. By these proceedings the property in dispute was assigned to the plaintiff.

On the trial of the cause, Alexander Brackenridge was offered as a witness on behalf of the defendants, and objected to by the plaintiff. The objection was overruled by the court, and the witness admitted; to which the plaintiff's counsel excepted.

The witness then testified that he was the only heir residing in Pittsburgh. On the 1st of April 1824, without any power of attorney, he renewed leases for a term of three years for the property which then was, and continued until the 25th of April 1831, to be held in common amongst the heirs. He collected the rents as they became due. On the 1st of April 1827, he again, without any power of attorney or instructions, renewed the leases for three years. This was acquiesced in by the plaintiff, to whom the witness always remitted his share of the rents, keeping with him a regular account. On the 1st of April 1829 the witness renewed leases for the property for one year. As the 1st of April 1830, when these leases were to expire, approached, he made a proposition to all the heirs, and, by letter dated the 14th of January 1830, to the plaintiff, to build upon the property jointly, or to give a lease of it for seven or ten years; and, in

III.—R

[M'Dowell v. Simpson.]

case they should conclude to build, that a lease for one year had better be given in order to make arrangements. To this proposition he received no positive answer from the plaintiff; who agreed, however, by letter dated the 19th of February 1830, to the suggestion to rent for one year. The witness, considering that this reply to his proposition amounted to no specific instruction, that as a part owner of the property he was entitled to an answer to the whole of his proposition, and that every thing stood in the same position as before, then executed on the 1st of February 1830 a lease under seal for seven years to John Wallace, under which the defendants now claim to hold possession, and which was signed by him as "Attorney for William Porter's heirs." He leased without exhibiting any authority to the tenants, who took it for granted that he possessed it. The plaintiff removed to Pittsburgh during the summer of 1830, where he has resided from that time up to the present. The witness went on as usual, collecting the rents as agent for all the heirs, which he paid over from time to time without keeping a particular account, sometimes taking a receipt for the same, and sometimes not. He had also charge of a judgment against Anthony Bulen, owned by the heirs. On the 17th of September 1830 the plaintiff gave him a general receipt for 200 dollars on account of this judgment. Under the old leases the annual rent of the property was 476 dollars 50 cents; under the new lease for seven years, 801 dollars 62 cents. On the 3d of December 1831 the plaintiff gave the witness a general receipt for 265 dollars 92 cents, who did not know whether the plaintiff was aware at what rate he was receiving rent. In December 1831 the witness left a general account of rents and moneys paid and received in the course of his agency, at the office of the plaintiff. The witness had conversations with the plaintiff as to the dissatisfaction which Magaw, another heir, had expressed about the lease for seven years. The plaintiff then expressed no dissatisfaction on his part about the lease, of which he seemed to have a knowledge. The witness had informed the plaintiff of the lease by letter directed to Lewistown or Harrisburg, to which, however, he received no answer from the plaintiff. The witness distrusted his own authority to make the lease, but relied upon the acquiescence of the other heirs. He became aware that Magaw was, and then expected that the others would also be, dissatisfied. Since the trial with Magaw, the witness discovered that the plaintiff was not satisfied about the lease, although he had never expressed dissatisfaction to the witness. The witness never told the plaintiff of the lease, but conversed with him repeatedly about it as a matter existing.

Dr Samuel Smith, one of the heirs, testified, that he removed to Pittsburgh on the 1st of November 1830. The first time the plaintiff mentioned to him the lease for seven years, the plaintiff expressed his astonishment that it had been executed. The increased rent was never a subject of conversation between them. The plaintiff uniformly expressed to the witness his determination to have posses-

[*M'Dowell v. Simpson.*]

sion of the property as soon as the partition should be confirmed, thinking it useless to proceed until then. The witness was satisfied that the plaintiff, who lived with him at Lewistown at the time, never received a letter apprising him of the lease for seven years. Both of them supposed it would be for one year. A long lease was not thought of by them. He never heard the plaintiff say that he was satisfied with the lease, but heard him telling a tenant he would have to go out.

The lease for seven years was then read in evidence, to which the plaintiff's counsel excepted.

It was further proved on the trial that after the lease was executed, a new pavement was laid, and the buildings were repaired by the tenant.

The following errors were relied on by the plaintiff in error.

1. The court erred in permitting Alexander Brackenridge to be sworn and examined as a witness.

2. The court erred in admitting in evidence the lease signed "A. Brackenridge, attorney for the heirs of William Porter" to John Wallace, dated the 1st of February 1830.

3. The court erred in not instructing the jury in the manner requested by the counsel for the plaintiff on the several points submitted.

*Dallas,* for plaintiff in error.

It is important that the property in dispute should not be locked up under the lease for seven years, and thus put beyond the reach of improvement by the plaintiff. Possessing, as the property does, an eligible situation for business in the midst of a rapidly improving city, it is a matter of astonishment that the lease should have ever been executed.

1. There was error in the admission of Alexander Brackenridge as a witness, upon whose testimony hung the whole cause. He is presented in the light of an agent, called to prove his own act and authority. And after he was admitted, he confessed, in the course of his examination, that he doubted his authority to make the lease. But independent of this fact, the nature of the case forbade the introduction of any parol evidence whatever. In M'Gunnagle *v.* Thornton, 10 *Serg. & Rawle* 251, it was laid down in the opinion delivered by Judge Duncan, that an agent may be a witness to prove a lease for one year; for the lease, being for a term under three years, was good by parol. See also Livingston et al. *v.* Swanwick, 2 *Dall.* 300. Here the witness was moreover incompetent on the ground of interest. It is true, that having acted without authority in executing the lease, he is liable to both parties. Yet he is directly answerable over to the defendants for the costs of this suit. And such a contingent interest disqualifies a witness. Kessler *v.* M'Conachy, 1 *Rawle* 440; Stewart *v.* Kipp, 5 *Johns.* 256; Powell *v.* Gordon, 2 *Esp. Rep.*

[M'Dowell v. Simpson.]

735; 1 *Caines's Rep.* 373; Jarvis v. Hayes, 2 *Strange* 1083; Green v. The New River Company, 4 *Term Rep.* 569.

2. The lease for seven years should not have been admitted in evidence. It was an instrument in writing under seal. By the act of 1772 (*Purd.* 681), it is necessary that the authority of the agent who executes it must also be in writing. Such was not the case here. The agent had neither written nor parol authority to make a lease for the period of seven years. 1 *Liv.* 35; Cooper v. Rankin, 5 *Binn.* 615; Gordon v. Bulkeley, 14 *Serg. & Rawle* 331; Mackey v. Bloodgood, 9 *Johns.* 285. The mode in which the lease was executed rendered it void. Andrews et al. v. Solomon et al., 1 *Peters* 361; Cage v. Acton, 2 *Lord Raym.* 518.

3. Although the agent acted without authority, was any thing done by the plaintiff that amounted to a ratification? A mere acquiescence on the part of the plaintiff cannot take the case out of the statute of frauds and perjuries, in contravention of which the lease was made. Nor does the receipt of rent amount to a ratification that will have that effect. Lessee of Meredith v. Macoss, 1 *Yeates* 200. The ratification must be in writing. There must be some evidence of it equal in solemnity to the instrument executed by the agent. Fosdick v. Gooding et al., 1 *Greenleaf* 34. Mere acquiescence could only give to the lease the face and effect of an estate at will, or of a lease from year to year. The act against frauds provides, that where a lease for a term exceeding three years is executed by an agent without authority, the lessee becomes a tenant at will. The law itself fixes an express relationship. Then suppose the plaintiff in this case had distrained, it would have been claiming against the defendants as tenants at will. People ex rel. Kline v. Rickert, 8 *Cowen* 226, 230; 2 *Wheat. Selw.* 53 by *Wharton*. Although the landlord may have given notice to the tenant to quit, still he may recover rent. Rising et al. v. Stannard, 17 *Mass.* 287. Where a lease is void, no parol acts can amount to a ratification. 9 *Wendell* 54, 68. It may be said that on the part of the plaintiff there was some delay in taking measures to have the lease rescinded. But any objection on this score will be at once removed on referring to his peculiar position. He was only one of the heirs. An action of partition was pending. As long as it remained undecided, he could not interfere. Nor did he receive rent after the partition was confirmed. *Allnat on Partition*, 5 *Law Lib.* 61; Barrington et al. v. Clarke, 2 *Penns. Rep.* 115.

*W. H. Lowrie*, for defendants in error.

Three questions arise in this case, and appear to be mainly relied upon by the plaintiff's counsel. 1. As to the competency of Alexander Brackenridge as a witness. 2. As to the admissibility of the lease in evidence. 3. Whether the circumstances proved amount to a ratification by the plaintiff of the acts of Brackenridge as his agent, and are sufficient to take the case out of the statute of frauds?

1. We contend that Brackenridge's interest is equal. He is equal-

[M'Dowell v. Simpson.]

ly liable to both parties.    But even if it were not so, I see no reason
why the principle, that agents are witnesses for their principals *ex
necessitate,* even where they are interested in a measure, should not
apply here.    The fact that it is a contract respecting lands does not
change the case.   Miller *v.* Hayman, 1 *Yeates* 23; M'Gunnagle *v.*
Thornton, 10 *Serg. & Rawle* 251; 9 *Ves.* 250.    The case in 10 *Serg.
& Rawle* 251 expressly overrules the cases in *Dallas* and *Yeates*
cited by the plaintiffs.    Other cases to the same point: The Proprie-
tors, &c. *v.* Call, 1 *Mass.* 484; Fisher *v.* Willard, 13 *Mass.* 379; 3
*Bibb's Rep.* 244; 2 *Marshall* 242.

2. The lease was properly admitted as part of the chain of testi-
mony on which we founded our defence.    Of itself it would have
been of no avail, because we had failed in proving that the agent
had authority to make such a lease.    It made no difference that it
was sealed.    The seal was surplusage if the authority was by parol.
Cooper *v.* Rankin, 5 *Binn.* 613; Damon *v.* Granby, 2 *Pick.* 352; 1
*Liv. Ag.* 44.    If the lease had been made under a forged authority,
it would have been admissible with the other testimony.    Vanhorne
et al *v.* Frick, 6 *Serg. & Rawle* 90.

3. Brackenridge's act was ratified by the plaintiff.    He knew the
lease had been made, and the terms of it.    He received the rent
under it, double what he had received under the old lease.    He per-
mitted the defendants to make improvements under it.    The build-
ings on the ground were ours, and we had a right to remove them.
That right is now gone, if the plaintiff succeeds.    He never disa-
vowed the agent's act.    It would therefore be inequitable to allow
the plaintiff to say he had not ratified the lease.    The case of Jones
*v.* Peterman, 3 *Serg. & Rawle* 545, sustains us here.    That case inti-
mates that the receiving of the rent alone would take the case out
of the statute.    But it is said that if these acts do amount to a rati-
fication, it is still a ratification of a *parol contract,* and that the con-
tract would still be within the statute.    The cases cited are where
the principal made a verbal lease himself for more than three years.
His receiving rent under the lease and distraining for it, are held not
to be such a ratification as to take the case out of the statute, because
the lease is still a verbal one.    But this is a written lease.    Grant that
it was void for want of authority, yet may not the principal ratify
it? make it his own lease? his own contract? his own writing?
and when ratified, is it not his agreement in writing?    It is then
clear of the statute of frauds, and not embraced within its reason.
There would have been no danger of perjury in proving its terms.
Bredin *v.* Dubarry, 14 *Serg. & Rawle* 30; Jackson *v.* Richtmyer, 13
*Johns.* 367; 12 *Johns.* 305; 1 *Liv. on Ag.* 44; Gordon *v.* Bulkeley, 14
*Serg. & Rawle* 331; Vanhorne et al. *v.* Frick, 6 *Serg. & Rawle* 90.

*Fetterman,* on the same side.

The evidence disclosed on the trial of this cause in the court be-
low has not been fully brought up on the record : and the presump-

tions arising from the fact that the case is not fairly before this court, must operate in our favour. Munderbach *v.* Lutz, 14 *Serg. & Rawle* 125; M'Dowell et al. *v.* Michell's Administrators, 1 *Ibid.* 298.

As to the first error assigned, there was nothing to show that the witness was interested at the time he was offered. The lease had not been read. The plaintiff's bill of exceptions does not state that he was objected to as a witness on the ground of interest. , His interest did not appear. We had then a right to consider him in the light of any other agent whose testimony was clearly admissible. 1 *Stark. Ev.* 112; 2 *Ibid.* 767.

On the point as to the admission of the lease, the charge of the court below was favourable to the plaintiff. It was not offered as evidence of the contract, but as part of the chain of testimony to prove the agency of the witness and the ratification of the plaintiff.

Next, as to the question of ratification, which is the main point on which this case must be decided. The charge of the court below left it for the jury to decide whether the equity of the case would take it out of the statute against frauds and perjuries; whether it would not preclude the plaintiff from rescinding the contract. Improvements were made without objection from the plaintiff. The tenants repaired the buildings, and, in compliance with the regulations of the city, put down new pavements. In consideration of a renewal of the lease, they agreed to pay double the amount of the rent they had before paid. The plaintiff for some time received the rent thus doubled. The simple and important point is, whether the court were right in leaving it to the jury to decide whether, although the lease in itself was worth nothing, which we admit, these equitable circumstances were not sufficient to take the case out of the statute ; to render it unjust to remove the tenants. Clarke et al. *v.* Vankirk, 14 *Serg. & Rawle* 354. If, with a knowledge of all the circumstances, the principal adopts the act of the agent, it is a sufficient ratification; and slight circumstances are evidence. *Paley on Ag.* 414, *Appendix—Ratification; Ibid.* 143, 145; Skinner *v.* Dayton et al., 19 *Johns.* 513, 550, 568. The principal must disavow the act of the agent, if he possesses a knowledge of it. Here the plaintiff had knowledge derived by letter from the agent. Watson et al. *v.* Alexander, 1 *Wash. C. C. Rep.* 455; Clarke's Executors *v.* Van Riemsdyk, 9 *Cranch* 153 ; Morgan *v.* Steele, 5 *Binn.* 305; Cooper *v.* Rankin, 5 *Ibid.* 615; 1 *Liv. on Ag.* 49.

*Biddle*, in reply, was requested by the court to confine his remarks to the question of Mr Brackenridge's competency as a witness. On this point he cited, 1 *Stark. Ev.* 112, 115; 15 *Eng. Com. Law Rep.* 250.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is founded on an exception to the admission of Mr Brackenridge as a witness; *first,* because he

has undertaken, as the agent of the plaintiff in error, who was also the plaintiff below, to give a lease of the land in question in this case to the defendants in error, under which they claimed a right to hold possession of it; and *second*, the matters of which he was to testify, were not the subject of oral evidence, because the act of assembly against frauds and perjuries requires that they should appear in writing. His having undertaken to act in the character of an agent for the plaintiff, is not sufficient to render him incompetent. The general rule on this subject seems to be in favour of the competency of the agent as a witness, unless in cases where the principal is sued on account of the negligence of the agent. In such cases the agent cannot be a witness for the principal, because in the event of a recovery against the principal, the agent becomes liable to indemnify his principal; and the judgment against the principal would be evidence against the agent in an action by the principal for indemnity. Hence it is the interest of the agent to procure by his testimony a judgment in favour of his principal, and therefore held incompetent. But the conduct of Mr Brackenridge is not impeached in this case; nor was he called to testify in favour of the plaintiff, for whom he had undertaken to act as agent. I am unable to perceive that his interest lay more on the one side than on the other in this case; and therefore it cannot be considered that he was inadmissible on the ground of interest. Having then no interest in the result of the suit, why should he not be competent to establish by his own testimony his authority as an agent? He is not a party on the record to the suit, that he should be excluded for that reason. Nor can it be said that he does not know the fact as well as any other. Then, unless there be some principle of policy that renders him incompetent as a witness for this purpose, it seems impossible to imagine any other ground for his being so; and so far as sound policy is concerned in the question, I am unable to satisfy my mind that the interest of the community would be advanced in the least by declaring him incompetent.

Next, as to the objection growing out of the act against frauds and perjuries, which declares, that "all leases, &c. made or created, &c. by parol, and not put in writing and signed by the parties so making or creating the same, or their *agents* thereunto lawfully *authorized by writing*, shall have the form and effect of leases or estates *at will only*, and shall not either in law or *equity* be deemed or taken to have any other or greater force or effect, *any consideration for making* any such parol leases or estates, or any former law or usage to the contrary notwithstanding, except nevertheless all leases not exceeding the term of three years from the making thereof." Now, although from the terms of this act, the authority under which Mr Brackenridge professed to act as the agent of the plaintiff, ought to have been in writing, so as to have given full effect to the lease according to its tenor; yet supposing he made it without either written or verbal authority, and that the plaintiff afterwards knowingly received the

rents as they became due, and were paid under it by the tenants, it might very properly be considered an implied assent, at least, by parol to the lease on his part, and give to it the force and effect of a lease at will; and if the tenants were suffered to hold under it for upwards of a year, paying the rent as it became due, and the plaintiff receiving it without objection, the lease, instead of continuing to be a lease strictly at will, would thereby become a lease from year to year, so that the tenants could only be put out of possession at the end of a year, upon having received three months previous notice to quit.   See Riggs *v.* Bell, 3 *Term Rep.* 371 ; Clayton *v.* Blakey, 8 *Term Rep.* 3; Schuyler *v.* Ligget, 2 *Cowen* 663 ; People *v.* Richart, 8 *Cowen* 226.   These were all facts which could be proved by parol evidence; and whether they existed or not, was a question which could only be decided by the jury after hearing the evidence.   The testimony of Mr Brackenridge tended in some degree to prove these facts, or at least some of them, and was therefore admissible.

The remaining errors insisted on in the argument, present but two questions.   *First,* had Mr Brackenridge any sufficient authority from the *plaintiff in* error to make a lease of the property in question for a term of seven years ? and *second,* if he had not, has Mr M'Dowell, the plaintiff, ratified and confirmed the lease made for that term of time by Mr Brackenridge?

As to the first of these questions, when Mr Brackenridge made the lease for seven years, it is clear from his own testimony that he had no authority, not even the colour of it, either verbal or written, from the plaintiff to make a lease of the property in dispute for more than one year.

We have seen from the act of assembly already recited, that an authority to make a lease of real estate, for a term exceeding three years, must be in writing; and though Mr Brackenridge had an authority in writing from the plaintiff to make a lease for one year, yet that was all, and his making it for seven years was as much an act on his part without authority, as if he had had no power to make one for any period of time whatever.   Notwithstanding, however, this lease for seven years was made without authority, it was still in the power of the plaintiff to ratify and confirm it : and this brings us to the *second* question, Has he done so?   It is not pretended that he ever did so by writing, and although he may have done it by *parol without writing,* yet it is obvious that such confirmation could give to the lease no greater force or effect than if he had made it himself originally by parol without writing; which would, according to the express terms of the act, have given it the force and effect of a lease *at will,* and nothing more.   It is proper to observe that such leases are not declared *void* by the act, but that they " shall have the force and effect of leases or estates at will only."   But what was formerly held and considered to be a lease at will, is now deemed a lease from year to year, when possession has been taken under it and held for upwards of a year, and the rent paid and received according to its

[M'Dowell v. Simpson.]

terms. Hence a parol lease made by the owner of land without writing, or by his agent constituted without writing, for a term exceeding three years, and possession taken and held under it for more than a year, the tenant during that time paying and the landlord receiving the rents as they became due, would be construed afterwards a lease from year to year, and might be put an end to by either party at the end of any year upon giving three months previous notice of his intention to do so; but at no other time could it be terminated, unless by the consent of both parties. Although Mr Brackenridge made a lease in writing under his hand and seal for a term of seven years, yet as it was made without any authority from the plaintiff, it was not binding on him; but if he afterwards received the rents knowingly which became due and were paid on it without objection for upwards of a year, it may be considered as implying an assent on the part of the plaintiff, that the party paying the rent should hold the property mentioned in the written lease, on his paying the rent therein specified, as tenant from year to year. But even an express declaration on the part of the plaintiff, without writing, that he was satisfied with the written lease, would not have been sufficient to make it other as to him than a parol lease without writing, because this would not make it "a lease *in writing, signed* by the plaintiff or his *agent,* thereunto lawfully *authorized by writing,*" which is what is required by the very words of the act against frauds. In no view then that can be taken of the written lease made by Mr Brackenridge, and the subsequent consent of the plaintiff in respect to it, admitting all the evidence given on the trial to be true, can it be made such a lease of the plaintiff for a term of seven years as would be good under the act, or pass any other interest than an estate *at will:* or after the receipt of rent upon it for a sufficient length of time, may be turned into a lease from year to year.

Now although the court below in their charge to the jury were clearly of opinion that Mr Brackenridge had no authority whatever from the plaintiff to make such a lease as he did, and that the plaintiff had done nothing which could do more than make it equivalent, at most, to a parol lease by him without writing; yet they took up a notion that the jury from the evidence might consider it as taken out of the operation of the act against frauds, because the defendants had done some work in repairing the pavement in front of the house, and had, by the terms of the lease, undertaken to pay a larger rent than had been paid under former leases of the same property; and accordingly instructed the jury, that "if the plaintiff, with a full knowledge of the fact that the property had been leased for seven years, had received the increased rent, or stood by and permitted improvements to be made having reference to the new lease, it would be inequitable to rescind the lease; and under such circumstances the defendants would not be affected by the statute."

It is not necessary in this case to decide whether under any, or what circumstances, a jury might, according to the rules and prin-

III.—S

[M'Dowell v. Simpson.]

ciples which have obtained in equity, enforce the specific execution of a parol lease, which, in its terms, comes within the provisions of the act against frauds : because the lease in question shows on its face that the making of improvements formed no part of the object either in giving or accepting it. It is barely a demise of the property on the one side for a term of seven years, and a stipulation on the other to pay a certain rent *per annum* without any increase or diminution of it during the lease. The enjoyment of the property in time past, and not in time to come, under such a lease, forms the consideration for the payment of the rent as it becomes payable, so that at the end of each quarter or year, as the rent becomes payable, the tenant, having enjoyed up to that time, has received the full consideration for the quarter or year's rent which has become due, and he can under no pretence withhold the payment of it; not even, I take it, were it made manifest that he would be evicted the next day, before the expiration of the lease, under a better title than that of his lessor. But if he will make improvements not contemplated or authorized by the lease, he must be considered as doing them at his own risk, since he does not choose to consult his landlord in respect to them. He cannot be permitted to improve his landlord out of his legal rights. In this case, however, all the improvements made, appear to have been nothing more than what are ordinarily incident to tenancies from year to year. And as to the circumstance of the rent being greater than any previously paid for the same property, it is what generally occurs in every city or town in an improving condition, where both the population and business of it are increasing rapidly, as was the case here. That the tenant may be induced to give a higher rent, in consideration of the extended term of the lease, is altogether probable, especially where it is believed that real estate is rising in value every year; but then this is so generally connected with the making of leases in all cases, that it cannot be made the ground for taking this case out of the act, without in effect undertaking to repeal it. Besides, it is obvious from the tenor of the act itself, that the longer the term agreed on may be, the greater the necessity for having it reduced to writing and signed by the parties. It appears to me, therefore, that the court below erred in advising the jury that, under the circumstances given in evidence, they might consider the defendants as not affected by the statute.

Judgment reversed, and a *venire de novo* awarded.