## PARRISH *v.* KOONS.

To exempt a contract for the sale of land from the effect of the statute of frauds, it must be in writing. No interest in land at law or equity can be contracted for by an agent authorized otherwise than by writing.

A Court of Equity will not compel the specific performance of a contract made by an agent not authorized by writing to make such contract.

The statute of frauds, which requires a memorandum in writing relative to the sale of lands, applies as well to equitable as legal estates. The one is as much within the spirit of the Act as the other.

While a Court of Equity will not compel the specific performance of a contract for the sale of land not in writing, still a party may recover damages at law for the breach of it.

It is well settled in Pennsylvania, that an agent created only by *parol* cannot enter into a written contract for the sale of land. His authority must be in writing, otherwise the statute of frauds will operate to defeat it.

A subsequent parol recognition of a contract made by an agent not authorized in writing to make such contract, will not exempt it from the effect of the statute. There may be subsequent acts of the principal which would validate the contract. But such subsequent ratification must be of such a nature as would take the case out of the statute if made with the principal himself.

A memorandum in writing of the contract for the sale of land signed by the vendor and delivered to the vendee, is not such a signing of the contract as required by the statute. There must be mutuality; and without it a specific performance will not be enforced in this state.

Time may be of the essence of a contract in equity as well as law. Where no time is fixed in the contract for the sale of land for its final completion, it ought to be perfected in such a time as the Court, having regard to all the circumstances existing in a given case, will regard as just and reasonable.

A Court of Equity will not exercise its power for the specific performance of a contract where a party has slept on his rights. Diligence is necessary to call the Court into action; and where it does not exist, equity will not lend its assistance.

The duty of promptness is not confined to either party, as to the time when a contract must be closed, where none is fixed by its terms. For, if any unnecessary delay is created by one, the other has the right to the limit of a reasonable time within which the contract shall be perfected.

To constitute an adequate written agreement for the sale of lands within the statute of frauds, it is necessary that it should state the terms of the contract with reasonable certainty, so that the substance of it could be made to appear and be understood from the writing itself, without having recourse to parol proof. An agreement defective in certainty cannot be supplied by parol proof; otherwise all the mischiefs which the statute of frauds was intended to prevent would exist; nor can such a contract be partly in writing and part parol.

If a contract be vague and uncertain, a Court of Equity will not exercise its extraordinary jurisdiction, but leave the party to his legal remedy. Nor will specific performance be enforced, unless the parties have described and identified the particular tract, or the contract furnishes the means of identifying with certainty the land to be conveyed.

Nor will directions to draw a deed given to a scrivener, and an examination thereof by the vendee, and proof that he said he was ready to close the business, take the case out of the statute of frauds.

It is the original contract on which the party asks and obtains his decree. If that is defective, resting only in parol, or in writing too vague and imprecise for the Court to decide upon, subsequent steps in the negotiation, such as giving instructions to the scrivener as to the drawing of the deed, examining the title papers, &c., are not sufficient to give effect to a contract originally defective and not according to the requisitions of the statute.

*May* 1.   THIS case came before the Court on a bill filed by the plaintiff against the defendant, to compel the specific performance of a contract for the sale of a lot of ground, in the county of Philadelphia.

The bill alleged the sale to the defendant, the readiness of the plaintiff to perform his part of the contract as set forth in the bill, and the refusal of the defendant to comply with his promise by the acceptance of the deed and payment of the purchase-money. The cause was heard on bill, answer, and proofs; but, as all the facts necessary fully to comprehend the questions decided, as well as the contract set forth in the bill, are so fully stated in the opinion of the Court, it is believed to be unnecessary to give any further statement of the pleadings or facts in the case.

The cause was argued by Mr. *Broom*, for the plaintiff, and Mr. *Kennedy*, for the respondent.

The counsel for the plaintiff contended there were two questions in controversy; and, first, as to the validity of the agreement: That there was no doubt that an agreement for the sale was made, which would be sufficient in law to affect the objects of it, unless forbidden by the statute from motives of public policy. That the case was not within the statute of frauds; that the vendor did sign the contract, and which was a compliance with the statute: 10 Watts, 387; also the payment of ten dollars; that the bargain was concluded; that if the defendant did not intend to ratify the bargain made by his agent, when he saw the paper signed by the grantor, he was then bound to disavow it and his agency in the matter, and give notice to the grantor accordingly; that the payment of the ten dollars was a part performance of the contract.

Second, that it was settled a Court of Equity would decree the specific performance of the sale of land by parol, when the defendant had confessed the sale, although denied in the answer: 3 Atk. 407; and that a Court of Equity had jurisdiction to decree a specific performance: Dalzell *v.* Crawford, 2 Penn. L. J. 17; 1 Simons & Stewart, 607.

It was contended there was no time limited as to completion of the contract, therefore the objection that the defendant had lost the advantages of a sale must fail; for the plaintiff was then able to extinguish all encumbrances. The objection made in the answer, that the plaintiff was not in a situation to make a good title in the spring, when the defendant contended the deed was to be made, could not avail, no express time being designated in the contract.

It was argued for the respondent, that Tea had no authority to make the contract set forth in the bill, and the person was not his agent for that purpose, and had no authority to make the contract, either in fact or law.

That Koons never paid the $10 as an earnest of the bargain and sale; that Koons never confirmed the bargain, as mentioned in the memorandum signed by the plaintiff; and that no contract was made by the defendant for the purchase, or by any one who had legal authority to make it; that whatever contract was made, was rescinded by the complainant's non-compliance with its terms.

But, supposing a contract of sale to be proved, it was not such a one as a Court of Equity would enforce between the parties, in the posture in which they were placed; for the contract could not be mutually enforced when made: 1 Watts, 556. That although the contract had been signed by the plaintiff, the defendant had never signed it, therefore it could not be enforced against the party who had not signed it: 1 Plow. 770; 1 W. & S. 555; 4 W. & S. 27; 10 Watts, 195.

That, whatever claim the plaintiff had, he could be compensated in damages, and had actually brought a suit in a court of law, and therefore he had no claim in a Court of Equity. That the contract attempted to be enforced was not legal and binding on the parties— either party could rescind it when he chose. It was against the policy of the law, and prohibited by the statute of frauds. It never was reduced to writing, as required by the statute, and therefore he had no remedy in a Court of Equity.

The opinion of the Court was delivered by

KING, President.—This case arises under a bill filed by the complainant for the specific execution of a contract for the purchase and sale of a lot of ground in Philadelphia county, entered into by the parties on the 14th of April, 1841. The facts established by the proof, so far as they are important for the clear understanding of the points in controversy, are these :—The complainant and defendant were proprietors as tenants in common in fee of a piece of ground in the Northern Liberties, which was subject to a joint mortgage given by them to the Pennsylvania Hospital for $8000. By subsequent arrangement between themselves they divided the land, and stipulated that the portion of it assigned to the plaintiff should be liable to the payment of the principal and interest of $3000 of the mortgage, while that pertaining to the defendant should

11

be subject to the payment of the remaining $5000. The complainant, Parrish, for the better purpose of sale, divided his portion of the ground into two building lots, one of which joins that part of the land allotted in the division to the defendant. Being desirous of effecting the sale of this lot, Parrish authorized a certain Richard Tea to sell it for him. About this time, Tea, being employed as a builder by Koons the defendant, was also authorized by him to purchase the lot, provided the terms could be made satisfactory to him, Koons. The price asked by Parrish for the lot was $4000. This sum Koons refused to give, but finally authorized Tea to offer $3700, and gave him a written memorandum expressing what terms he would make the purchase upon, which memorandum was in these words: "The most is 3700 subject to 3000 mortgage. No taxes or other liens (except the mortgage) to be allowed." Clothed with this authority, Tea commenced the negotiation, and, having obtained the assent of Parrish to his proposal, exhibited to him Koons's written offer. Parrish, in closing with Tea, required from him the payment of $10 by way of earnest, which Tea having procured from Koons, paid him. On this payment Parrish gave Tea a receipt on the same paper on which Koons's proposal was written, which receipt was signed by Parrish, and is in the following words. "Received Ten Dollars on account of the purchase. The mortgage to be removed from the Fifth Street lot as soon as the title is made without delay." Of both these papers Parrish retained a copy, which was signed by himself, and Tea "for Isaac Koons." The original proposal of Koons with Parrish, receipt annexed, was returned to Tea, by whom it was delivered to Koons. Immediately after, Koons directed his conveyancer, Jacob F. Hoeckley, to draw a deed for the lot from Parrish to him, which was accordingly done and executed by Parrish on the 21st day of April, 1841, one week after the contract. This deed was not delivered to Koons, but kept by Hoeckley as an escrow until the contract should be finally consummated by Parrish's removing from the land certain encumbrances which bound it. The deed neither recites nor refers to the contract nor to the $3000 mortgage to which it was sold subject; but is a deed in absolute fee-simple for the consideration expressed of $3700. It however describes the lot by metes and bounds. The transaction stood in this way, waiting for the clearing of the title from the encumbrances by Parrish. There is no evidence before me that Koons ever in any way urged Parrish to a speedy consummation of the bargain. About the 1st of September, Parrish having effected the removal of all the

liens, except that of a judgment of $500, and perhaps some small liens for taxes and curbing, proposed through his attorney, to Koons's conveyancer, that enough of the purchase-money should remain in Koons's hand to satisfy this judgment, and moreover, that the removal of the $3000 from the Fifth Street lot should be delayed until this lien should be fully discharged. This was declined, and Parrish immediately paid the judgment, notifying Koons of the fact, and calling on him to complete his part of the contract, by paying the purchase-money and removing the mortgage on the Fifth Street lot. At the same time the attorney of Parrish, having obtained the deed drawn by Hoeckley, tendered it to Koons, informing him that the liens on the land were removed. No further objections to the title were urged then by Koons, but he declined fulfilling his contract, on the ground of the delay in completing it, alleging that in consequence of this delay he had lost an advantageous sale of the lot. When reminded by the attorney that he had never required an earlier completion of the title, he did not deny the fact, but gave only a vague answer.

The complainant's case is fully set out in his bill, and the contract he seeks to enforce is a contract by which he alleges Koons agreed to give $700 in money for the lot, and without delay to remove the $3000 mortgage from the Fifth Street lot. In his answer the defendant denies that Tea was his agent, and avers that he was the agent of the complainant, and as such offered to make him a clear title *forthwith* for the lot, if he, Koons, should make an offer for it acceptable to the plaintiff; that he gave Tea a written offer for it in the words heretofore set forth, and gave him $10 to bind the bargain. He denies that he ever authorized Tea to sign any paper as his agent binding him to the purchase; he admits that he made no other objection to the title except such as arose from the unsatisfied encumbrances: admits that he refused to further execute the contract, but alleges that his reason for so doing was, because from the complainant's delays he had lost an advantageous sale of the land to one B. F. Huddy, the chance for which sale was his principal inducement in proposing for the lot, and that failing in obtaining the clear title in due season, he rescinded the contract.

The contract admitted by the answer is a materially different one from that charged in the bill. The bill asserts a contract by the defendant to purchase the property at $700 cash, and, as a part of it, that he should remove without delay, a mortgage binding as well the property sold as other land of the complainant. This might involve the necessity of the defendant's paying off this large en-

cumbrance. Whereas the contract admitted in the answer is for the purchase of the property subject to the mortgage, which in general and universal parlance is understood to mean, that the mortgage is to remain in *statu quo* so long as the holder of it is satisfied. The admitted contract besides is one to be completed "without delay," while that charged omits this important stipulation. Besides, the authority of Tea to sign any contract affecting the defendant is absolutely denied. The agreement therefore admitted by the answer differing from that stated in the bill, renders it necessary for the plaintiff to prove the contract charged *aliunde:* Thompson *v.* Todd, 1 Peters, C. C. R. 380.

In the argument various objections have been interposed why the complainant should not have a decree for specific performance. I will notice them in an order which seems to me most conducive to clearness and precision, without exactly following that pursued by counsel.

In the first place it is insisted, that in point of fact, Tea was not the agent of Koons, authorized to treat for him for the purchase of the land. The testimony of Tea on this point is direct and positive, that he was expressly authorized by Koons to make the purchase. Although he was previously authorized by Parrish to obtain if he could a purchaser, this fact is not at all inconsistent with his acting as agent also for Koons. The circumstances existing in the case showing this agency—such as Koons's written offer; the fact that Koons afterwards recognised his acts, by further prosecuting the negotiation; causing the deeds to be prepared, &c.; and never in any part of the transaction questioning his authority—are sufficient, conjoined to the positive testimony of Tea, to outweigh the denial of his agency in the answer. But it is equally true, that Tea was not constituted the agent of Koons by any written authority, and it is true that he had no express authority from Koons to execute on his behalf any written contract.

The question then first arises, whether an agent for the *purchase* or sale of land constituted by parol, can execute an agreement in writing for such purchase or sale, binding his principal in a proceeding to compel specific execution of the contract. In England, at this time of day, there can be no doubt but that a written contract entered into by such an agent, would be so obligatory on his principal within the statute of 29 Car. 2, ch. 3, "For the prevention of frauds and perjuries." As early as the case of Waller *v.* Henden, 5 Vin. Abr. 524, pl. 45, 10 Geo. 1, (1724), it was decided

by Lord Macclesfield that the authority to treat for or buy an estate may be good without writing, though the contract itself must be in writing by the statute of frauds. To the same effect is the case of Wedderburn v. Carr, decided in the Exchequer in 1775, and cited in 3 Wooddeson's Lectures, 423. In Clenan v. Cooke, 1 Sch. and Lef. 31 (1802), Lord Redesdale denied that an authority in writing was necessary to constitute an agent for the purpose of making a contract respecting land, and asserted that the decided cases were to the contrary. In this case (Clenan v. Cooke), that of Barry v. Lord Barrymore is cited as having been decided by Lord Lifford in the Irish Chancery in 1770, in the same way; and this decision is mentioned by Lord Redesdale with approbation in pronouncing his decree. In Coles v. Trecothick, 9 Ves. Jr. 240–50 (1804), Lord Eldon says, that "it is clearly settled now that an agent need not be authorized in writing." Sir Edward Sugden, in his Treatise on Vendors and Purchasers, lays this position down as fundamental. The English rule that an auctioneer is the agent for both buyer and seller, and as such authorized to sign an agreement in writing binding on them respectively, is a natural offshoot of this doctrine. Although unquestioned since Simon v. Motiver, 3 Burr. 1921, as to goods, it has been questioned, nay, decided against by high authority as to land; although finally the rule as to sales either of lands or goods has been decided to be the same. The history of this conflict of decision and its final settlement, will be found in the case of M'Comb v. Wright, 4 John. Ch. R. 659, in which the English cases are collected and reviewed, and the final doctrine of these courts correctly exhibited by Chancellor Kent, in one of his elaborate and highly instructive opinions. But an examination of these cases will show them to have been decided, not under the three first sections of the statute of frauds, which alone are in force in Pennsylvania, but on the construction of the 4th and 17th sections of that statute, which never had an existence in our jurisprudence.

The first section of the statute declares, that "all leases, estates, interests of freehold, or terms of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements, or hereditaments made or created by livery and seisin only or by parol, and not put in writing and signed by the *parties* so making or creating the same, *or their agents thereunto lawfully authorized in writing*, shall have the force and effect of leases or estates at will only, and shall not, *either at law or equity*, be deemed or taken to have any other or greater force or effect." The second section excepts from

H

the operation of the first "all leases not exceeding the term of three years from the making thereof, whereupon the rent reserved to the landlord during such term shall amount unto two third parts, at least, of the full improved value of the thing demised." The third section enacts, "that no leases, estates, or interests, either of freehold, or terms of years, or any uncertain interest therein, not being copyhold or customary interest of, in, to, or out of, any messuages, manors, lands, tenements, or hereditaments, shall at any time be assigned, granted, or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting, or surrendering the same, *or their agents thereto, lawfully authorized by* WRITING, or by act and operation of law. Our Act of Assembly, of the 21st of March, 1772, is a precise transcript of these sections, except it omits so much of the second section as refers to the rents reserved in parol leases for three years, and so much of the third as mentions " copyhold or customary interest." Under these sections, there seems no room for judicial construction to hold that any interest at law or equity in land can be contracted for by an agent authorized otherwise than by writing. That any such agent must be so authorized, is not only declared in the first section, which refers to agreements for leases and estates in land, but is repeated in the third, which contemplates assignments, grants, and surrenders of subsisting leases and uncertain interests. The fourth section of the English statute provides, " that no *action* shall be brought, whereby to charge any executor or administrator upon any special promise to answer damages out of his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, or to charge any person, upon any agreement made upon consideration of marriage, or *upon any contract or sale of lands, tenements, or hereditaments*, or *any interest in or concerning them*, or upon any agreement that is not to be performed within the space of one year from the making thereof, *unless* the agreement upon which such action shall be brought, or some MEMORANDUM or note thereof shall be *in writing*, and *signed by the party to be charged therewith, or some other person* thereunto by him *lawfully authorized.*" The 17th section directs, " that no contract for the sale of any goods, wares, or merchandises, for the price of ten pounds sterling, or upwards, shall be good, except the buyer shall accept part of the goods so sold, and actually receive the same ; or give something in earnest to bind the bargain, or in part payment, or that *some note* or MEMORANDUM *in writing* of said

bargain be made and signed by the parties to be charged by such contract, or their *agents* thereunto lawfully authorized."

It is, as I have said, under these sections that the English Courts have determined that an agent to contract for the purchase of land, may be constituted by parol; holding that their legislature had taken this distinction, that where an interest is intended to be actually passed, the agent must be authorized by writing; but that where a mere agreement is entered into, the agent may be authorized to treat by parol for, or buy an estate, although the contract itself must be in writing; and that there is no difference between these two clauses of the statute in regard to the appointment and power of an agent: Sug. on Vend. 132–3, 10th ed. In no case in equity, where the point could only arise, has it been decided, that under the first three sections of the statute, independent of the 4th, would or could a Court of Chancery enforce a contract for the purchase of land, executed in writing by an agent, having no written authority to that effect from his principal. In the early decisions, such as Waller *v.* Henden, and Wedderburn *v.* Carr, vide supra, this is not so manifest, by reason of the brief notes we have of these cases. In Coles *v.* Trecothick, 9 Ves. Jr. 249, 50, however, Lord Elden's opinion plainly shows that he had only in view the 4th and 17th sections of the statute. "Much perplexity," says he, "has arisen by the cases of auctions, for in Simon *v.* Motiver, it was held as to goods, that the auctioneer taking down the name was a signing within the statute, and it is very singular, after, and, without disturbing it, that it was held by Lord Chief Justice Eyre, that it would not do as to land. Why not ? The form of the *two clauses* is not the same, but the terms as to the *memorandum* in writing are exactly the same." In Clenan *v.* Cooke, 1 Sch. & Lefroy, 25, 27, Lord Redesdale, on noticing remarks of the defendant's counsel, commenting on a section of the Irish statute of frauds analogous to the 4th section of 29 Car. 2, says, " It has always been understood in England that the legislature only required such an authority under this clause as was a lawful one at the time of the passage of the Act to make contracts binding; and though at all times (as well before the statute as since) it was necessary to have an authority in writing for creating or passing an estate for another, it was otherwise as to contracts, which passed no estate." The case of M'Comb *v.* Wright, 4 John. C. R. 659, is also decided on the 4th and 17th sections, and enters into a comparison of the phraseology of these two sections, relative to the effect in each of the words " note or memorandum in writing," which phrase is not

used in the three first sections of the Act. The English cases arising under these sections, therefore, can throw no light on the question before the Court, which must be decided with reference solely to the three first sections of the statute, which declare that "*all* interests in lands, &c., created by livery of seisin or parol, and not put in writing and signed by the *parties* so making or creating the same, or *their agents lawfully authorized in writing*, shall have the force and effect of leases at will only, and shall not, *either at law* or in *equity*, be deemed or taken to have any other or greater effect." And that the statute operates alike on legal and equitable estates has been held, in Goncher *v.* Martin, 9 Watts, 106, where Rogers, Justice, delivering the judgment of the Court, says, "It is a general rule that no estate or interest in land shall pass but by deed, or some instrument in writing signed by parties; and it is immaterial whether the interest be legal or equitable, as an equitable interest is an interest in land which comes within the words and spirit of the statute of frauds." In denying the legality of a contract in writing for the purchase or sale of lands, made by an agent created by parol, I am to be understood as speaking only with reference to the specific execution of such a contract, either by a recovery in an equitable ejectment according to our old system, or a decree for specific performance, under our more improved one. I am not calling in question the sufficiency of such a contract to enable either party to recover damages at law for the breach of it. That is settled by the case of Bell *v.* Andrews, 4 Dall. 152, which has ever since been adhered to, and is undoubted law : and that such an action can be maintained on a written contract made on behalf of the vendee, by an agent created by parol, is expressly decided by Ewing *v.* Tee, 1 Binn. 450, the case not being within our statute of frauds.

But no case can be shown, in which, in an action brought by the vendor to recover the purchase-money of land contracted to be sold, or by a vendee to recover possession of such land, in an equitable ejectment, it has been held, that a contract in writing, executed by an agent for either party constituted merely by parol, was sufficient within the statute of frauds, where a part performance has not been shown to exist, sufficient in itself, to take the case out of the statute. That an agent for a *seller* of land, competent to make a written contract binding on his principal in a proceeding for specific execution, cannot be so constituted, is expressly ruled by the cases of Van Horne *v.* Fricke, 6 S. & R. 90; M'Dowell *v.* Simpson, 3 Watts,

129; Nicholson v. Mifflin, 2 Dall. 246, more fully reported in 2 Yeates, 38; and Meredith v. Macoss, 1 Yeates, 200. That the agent for the buyer should be similarly constituted, so as to authorize him to execute a contract in writing binding to this extent on his principal, follows, not only because the statute speaks of the "parties or their agents thereunto lawfully authorized in writing," but because mutuality of obligations in contracts sought to be specifically performed, is an essential requisite to authorize equitable intervention between the parties : Lawrence v. Butler, 1 Sch. & Lef. 13. If a Court of Equity should refuse to execute, against a vendor, a contract made in writing by an agent not so authorized, it should equally refuse where relief was asked against a vendee sought to be made responsible for the written contract of his agent, not constituted in writing.

But it has been argued, that, admitting Tea in this case not to have been so empowered, as to authorize him to join in a written contract for Koons, yet the defendant, by receiving and retaining the agreement made by Tea without objecting to his authority, and proceeding to make the necessary arrangements to carry it into effect, so recognised the acts of his agent as to make them his own. It is an undoubted principle that a subsequent recognition of the acts of an agent, even where he has exceeded his authority, is equivalent to a previous express authority. But it cannot be greater. And, if the previous express authority is required by *positive law* to be in writing, the subsequent recognition must be of a kind as unequivocal; otherwise we run into the very dangers of fraud and perjury which the statute was intended to avoid. It would be in vain for the statute to declare that the agent should originally be constituted in writing, if courts of law should hold that a subsequent parol recognition of the acts of an agent, not constituted originally in writing, would satisfy the law. This would only require the form of the perjury to be changed to accomplish all the evils the law deprecates. I grant that there may be subsequent acts of recognition of a written contract made by a parol agent, which would bind the principal to the contract so made. As if under such a contract a vendor accepted the purchase-money, suffered the vendee to enter into possession of the lands, and improve them, he would undoubtedly be compelled to perform his part of the contract, and execute a title to the vendee. These principles, I conceive, receive full support from the case of M'Dowell v. Simpson, 3 Watts, 129. And to the same effect is Vanhorne v. Fricke,

12        H 2

6 S. & R. 90, where the Court held, that although "a sale of land by an agent under a parol authority is void, yet, if the sale by the agent be subsequently affirmed by the principal, he and those claiming under him are estopped from recovering the land *in eject-ment.*" What would be a subsequent affirmance of a sale made by a parol agent, so as to make it binding on his principal, is not very distinctly said in this case; but it may be fairly inferred from it, that the subsequent affirmance must be of such a nature, as would have taken the case out of the statute if it had arisen under a parol contract, made by the principal himself. "By our Acts of Assembly," says Chief Justice Tilghman, "an authority to sell land must be in writing; therefore, if the sale had rested solely on the parol authority, it would have been void. How then can it be good unless the principal does some act *after the sale,* which either directly or indirectly confirms the sale? If *possession* had been delivered with the assent of Fricke (the principal), it would have been sufficient. But without that, or some other act demonstrative of consent, *and* which might have been considered carrying the contract at least in part into effect, *the sale must have remained invalid.*" Now in the present case, what act of part performance has the vendor done and the vendee received, which, had this been a mere parol contract, would have taken it out of the statute? Has he given possession to the vendee? No, he still retains it. Does the fact of the vendee's agent paying, and the vendor receiving the $10 earnest paid at the time the contract was entered into, work this result? From the earliest decisions under the statute, such a fact has been held to be an immaterial one: Seagood *v.* Meale & Leonard, 2 Equity Cases Abr. 49, pl. 20. If payment of part of the contracted price by the vendee, would operate to take a parol contract out of the statute as against the vendee so paying, then would the receipt of such part so operate against the vendor. So far from this being the law, the case of M'Kee *v.* Phillips, 9 Watts, 85, decides that payment of part or the whole of the purchase-money, on a parol sale of land *as it admits of compensation,* does not take a case out of the statute of frauds. On the ground of the insufficiency of Tea's authority to make a contract which a Court of Equity would enforce by a decree for specific performance, the plaintiff's case fails.

But it is said that, admitting Tea to have had no sufficient authority to contract for Koons in writing, yet, inasmuch as the written contract in this case was signed by the vendor, and deli-

vered to the vendee, the case is taken out of the statute, and the inadequacy of the authority of Tea to sign for Koons becomes unimportant, as the contract, without such signature, was obligatory on both parties, from being signed by Parrish only, and delivered to Koons. This position I consider distinctly negatived by the case of Wilson *v.* Clark, 1 W. & S. 554, in which Chief Justice Gibson reviews the English decisions which hold that an agreement will be enforced in equity against the party signing it, although not signed by the other party; shows these decisions to have been made under a section of the British statute, not in force here, and to be inconsistent with the fundamental doctrine of equity, "that a Chancellor, when uncontrolled by arbitrary enactment, executes no contract which is not the source of mutual obligation and mutual remedy;" and finally decides that in Pennsylvania, a contract without such mutuality will not be enforced by a decree for specific performance. The case of Lowry *v.* Mehaffy, 10 Watts, 387, I consider distinguishable from Wilson *v.* Clark. In Lowry *v.* Mehaffy, besides the signing of the contract by the vendor, the agreement was partly executed by the payment of part of the purchase-money, and *delivery of possession* of the land to the purchaser. These latter circumstances alone would have been sufficient to have taken the case out of the statute, if the agreement had been merely by parol: Billington *v.* Welch, 5 Binn. 131; Miller *v.* Horner, 2 Rawle, 13. It is true that Judge Kennedy, in delivering the opinion of the Court, says that " an agreement reduced to writing, and signed by the owner of the estate, specifying the terms and conditions *fully* upon which he has agreed to part with his right in it, and at the same time delivered to the other party, would *seem* to be sufficient without its being signed by the latter, to whom the owner agrees to pass the right," yet he adds, "in the present case this was not only done, but the agreement was also partially carried into effect by the payment of nearly one-fourth of the purchase-money, and the delivery of the possession of the property sold to the vendees by the vendor," and finally says that "the vendor in *such a case*" (by which I understand him, the case before the Court, with all its attending facts) " may, by action against the vendee, compel the payment of the residue of the purchase-money." But if he can be understood to say (what fairly I think he cannot be) that a contract, signed by the vendor and delivered to the vendee, though never signed by the latter, is such an agreement as equity in Pennsylvania will enforce in a proceeding by the vendor against

the vendee for specific performance: then his opinion is in conflict with the case of Wilson *v.* Clark, and that, independent of the soundness and clearness of its reasoning, being the later decision, must control my judgment. I do not, however, think that any such collision between the cases necessarily arises, as in each the direct point of decision is different.

The conclusion I have arrived at in the point last disposed of is decisive of the case against the plaintiff; yet, as other questions of interest and importance present themselves, and have been considered, I will express my views upon them.

It is insisted that the lapse of time which intervened between the date of the contract, and when Parrish was ready to give the defendant a title clear of encumbrances, which was some five months, authorized Koons to rescind the contract, particularly as he lost by the delay an advantageous sale of the lot, and that he did so rescind it. Unquestionably, in equity as well as law, time may be of the essence of the contract, where the parties contracting think proper to make it so. But in this contract no time is fixed for the completion of the title. All that is said in it on the subject of time is with respect to the removal of the mortgage on the Fifth Street property, which, "as soon as the title is made, is to be removed without delay." Where, however, no time is fixed in a contract for the sale of land for its final completion, it ought to be perfected in such a time as, the Court having regard to all the circumstances existing in a given case, will regard as just and reasonable. A bill for a specific performance, being an application to the discretion, or rather to the extraordinary jurisdiction of equity, it will not be exercised in favour of a party who has slept on his rights. Due diligence is necessary to call the Court into action, and where it does not exist, a Court of Equity will not lend its assistance; it always discountenances laches and neglect: Per Lord Manners: 1 Ball and Beatty, 68 (Sug. vol. 1, 298); Benedict *v.* Lynch, 1 John. Ch. R. 370. But the duty of promptness of action does not only rest on the vendor, in such cases as this, where the time within which the contract must be closed is not fixed by its terms. In such a case, if any unnecessary delay is created by one party, the other has a right to limit a reasonable time within which the contract shall be perfected by the other; and where the time has been thus fairly limited, by a notice stating that within such a period that which is required must be done, or otherwise the contract will be considered at an end, the Court has very

frequently supported the proceeding: Per Lord Langdale, M. R.; Taylor v. Brown, 2 Beaver, 183. Even where the time within which certain acts are to be done have been fixed in the contract, a party who is to be benefited by such acts will be considered as waiving them if he does not require their completion within the time fixed. Thus in Gevet v. Humfrey, 3 Ves. Jr. 818, it was ruled that if a purchaser do not call for the abstract before the time agreed upon for its delivery, equity will consider the time as waived. So in Jones v. Price, 3 Anst. 924, it was held that even where, by the terms of an auction, the sale was to be completed on a given day, yet, if neither party takes any step to quicken the other, till it becomes impossible to execute the agreement by the day fixed, the time is waived, and equity will interfere to prevent the purchaser taking advantage of it at law. To the same effect is Harris v. Troop, 8 Paige, 433. These latter were cases in which a time for completion was fixed by the contract. And they apply *a fortiori* to a case in which the contract is silent on this subject. In the case under consideration, the purchaser, after directing his scrivener to prepare the deed, took no steps to require the removal of the encumbrances, as far as can be collected from the evidence. When the vendor, through his attorney, proposed to the defendant's scrivener that the defendant should retain from the purchase-money enough to discharge the remaining liens, he was met only by a refusal to acquiesce in this reasonable proposal. Nothing was then said about the lapse of time. Then he, according to the evidence, for the first time noticed that the $500 judgment was removed, and then he tendered to the defendant the deed of conveyance. Then he is told that his delay had lost Mr. Koons an advantageous sale, and the further prosecution of the sale is declined. Under such a state of facts, and where no notice is proved of any requisition on the vendor to remove the encumbrances in a reasonable time fixed in the notice, which, according to the case of Taylor v. Brown, 2 Beaver, 180, is the true course to be pursued by a purchaser under such circumstances. I do not regard the delay in removing the encumbrances as justifying a rescinding of the contract by the defendant. It is true that the answer alleges that the defendant " notified the complainant that unless he *promptly* removed the encumbrances he would rescind the contract," yet the answer is wholly unsupported by the proofs—no such notice is in evidence. If, indeed, by the effluxion of time, the defendant had actually lost a purchaser at an advanced price, as he alleges in his

answer, in consequence of the delay, the Court would be less disposed to infer an acquiescence in the delays attending the removal of the encumbrances. Of the truth of this important fact not a particle of testimony has been adduced. Such an omission on a point so vital to the defence can only be rationally attributed to one cause, viz. the non-existence of evidence to sustain the allegation. The cases in which changes of circumstances affecting the character or justice of the contract, arising from lapse of time, have induced Courts of Equity to refuse aid to the vendor, are much more urgent in their circumstances than any proved in this case. On the whole, I am of opinion that no such unreasonable delay in removing the encumbrances has been shown, as should make the Court refuse to enforce the execution of this contract.

The last objection raised to the complainant's right to a decree for performance gives rise to another serious difficulty in the plaintiff's case. It is insisted that the agreement of the 14th of April, 1841, is not, from its vagueness or imprecision, such a memorandum in writing signed by the parties as can be enforced by the Court, consistent with the statute of frauds. As the agreement charged is denied in the defendant's answer, it was unnecessary for him to insist on the statute as a bar. The complainant in such a case must produce legal evidence of the existence of the agreement: Cozene v. Graham, 2 Paige, 181; Ontario Bank v. Root, 3 Paige, 481. We must then inquire whether this objection is well founded.

To constitute an adequate written agreement for the sale of lands within the statute, it is necessary that it should state the terms of the contract with reasonable certainty, so that the substance of it could be made to appear and be understood from the writing itself, without having recourse to parol proof. For, an agreement defective in certainty cannot be supplied by parol proof, for that would at once open the door to perjury, and to introduce all the mischiefs which the statute was intended to prevent. A contract cannot rest partly in writing and partly in parol. Unless the essential terms of the bargain and sale can be ascertained from the writing itself, or by a reference contained in it to something else, the writing is not a compliance with the statute: Parkhurst v. Van Cortland, 1 John. C. R. 280. If a contract be vague and uncertain, a Court of Equity will not exercise its extraordinary jurisdiction, but leave the party to his legal remedy: Colson v. Thompson, 2 Wheat. 341; Abeel v. Radcliff, 13 John. R. 297. In Reed's

Heirs v. Hornback, 4 J. J. Marsh. 377, it was ruled that specific execution of a contract will not be enforced unless parties have described and identified the particular tract, or unless the contract furnishes the means of identifying with certainty the land to be conveyed. Other American cases on the doctrine will be found in Ellis v. Deadman's Heirs, 4 Bibb, 467; Kendall v. Alney, 2 Sumner, 278; Carr v. Duval, 14 Peters, 77; Abeel v. Radcliff, 13 John. R. 297. The English cases on this subject are cited and commented upon in Sugden on Vend. vol. 1, p. 118. And whether the instrument from which the contract is sought to be deduced is a receipt for a deposit, earnest, or purchase-money, it must contain the same requisites to bring it within the statute. In Blagden v. Bradbear, 12 Ves. 471, it was held, by the master of the rolls, that although an auctioneer's receipt for the deposit may amount to a sufficient note or memorandum of an agreement within the statute, yet for that purpose the receipt must contain in itself, or by reference to something else, what the agreement is. This doctrine had previously been strongly intimated by Lord Eldon, in Coles v. Trecothick, 9 Ves. 252, 3.

The application of these principles to the case before the Court seems decisive against the plaintiff. The only written memoranda of the original contract is found in the defendant's proposal, and the plaintiff's receipt, which are considered by the plaintiff as forming one instrument. The absolute insufficiency of these documents to constitute any definite contract in themselves appears best from simply reciting them. They are as follows: "The most is 3700, subject to 3000 mortgage. No taxes or other liens (except the mortgage) will be allowed. Received Ten Dollars on account of the purchase. The mortgage to be removed from the 5th street lot as soon as the title is made, without delay. R. A. Parrish: For Isaac Koons, Richard Tea." Can anything be extracted from such papers from which a Court of Chancery can advisedly decree a specific performance? Where is the estate bargained for? What is the quantity of land to be conveyed? What is the kind of estate to be conveyed? Without associating these papers with the parol evidence in the cause, it is impossible to extract anything intelligible from them. This, as has been seen, is wholly inadmissible: Parkhurst v. Van Cortland, supra. Every agreement which is required to be in writing by the statute of frauds, must be certain in itself, or capable of being made so by reference to something

else, whereby the terms can be ascertained with reasonable precision, or it cannot be carried into effect.

Nor does the receipt and payment of the earnest, or the subsequent acceptance of a small draft of $20 drawn by Parrish on Koons in favour of Tea, nor the direction by Koons to his scrivener to draw the deed, nor the subsequent execution of it by Parrish as as escrow, change the result that follows from the defect in the original agreement. The legal effect of the small payment, I have already considered. Rent-rolls, particulars of estates, abstracts, &c., delivered by the vendor to the purchaser, will not be considered an agreement, although signed by him and containing the particulars of the agreement: 1 Sugden on Vend. 10th ed. 177, citing Whaley v. Bagnell, 6 Bro. P. C. 5; Cooke v. Toombs, 2 Anst. 420. In Givens v. Calder, 2 Dessaussure's Ch. Rep. 171, the vendor having entered into a parol agreement for the sale of land, gave instructions in writing to an attorney to draw the deeds of conveyance. The deeds were drawn, and the vendor took them home and wrote to the vendee that they were ready, and requested him to come and settle the business, but died before the parties met. Yet this was held not to be such an agreement as would take the case out of the statute of frauds. In Gratz v. Gratz, 4 Rawle, 433, it was held that the "employing and giving instructions to a scrivener to draw a deed of partition or other writings, deemed necessary for carrying a partition into effect, and going on the property with an artist, and measuring off and designating the lines of division according to the agreement, for the purpose of enabling the scrivener to draw the writings, and to describe the several allotments with precision and accuracy, could not be considered of a character sufficient to take the case out of the act against frauds." It is the original contract on which the party is to ask and obtain his decree. If that is defective because resting only on parol, or on a writing too vague and imprecise for the Court to decree upon, such steps in the progress of the negotiation as occurred in this case are not sufficient to give effect to it.

The plaintiff has, however, endeavoured to supply the defects in the written contract by the admissions in the defendant's answer. But if the plaintiff uses these admissions, he must take them in all their connexions: for a Court of Equity will not allow a plaintiff to read a passage from a defendant's answer for the purpose of fixing the defendant with an admission, without reading the explanations and qualifications by which the admissions may be accompa-

nied, even though such explanations and qualifications be contained in a distinct part of the bill. But even a contract admitted by an answer must not essentially vary from the contract set forth in the bill: unless they correspond, a specific performance will not be decreed: Harris *v.* Knickerbocker, 5 Wend. 638. The contract admitted is a contract for the purchase of the lot for the price of $3700, of which $700 was to be paid in cash, and $3000 to remain charged on the lot purchased, the title to be completed forthwith. The contract charged is a purchase by the defendant of the lot at $3700, of which $700 was to be cash, and $3000 to remain on mortgage, by which this lot and other property of the seller was bound, the purchaser contracting to remove the lien of the mortgage from such other property. This last is a most important variance between the contracts, and introduces a new term into the agreement, which the defendant denies he ever acquiesced in. In another important feature, the contracts differ. The defendant asserts that his contract required the title to be made to him *forthwith*. In the plaintiff's view of it, no such feature exists. The plaintiff's case cannot, therefore, consistent with principles, be extracted from the defendant's answer. It must be proved *aliunde*. This he has attempted, but has failed to do, by the kind of evidence required by the statute of frauds. But if a defendant, in his answer, even admits a parol contract, as charged in the plaintiff's bill, still he may rely on the statute as a complete bar: 2 Story, Eq. 59, 60. It is immaterial what admissions are made by a defendant, says Sir William Grant in Blagden *v.* Bradbear, who insists upon the benefit of the statute, for he throws it upon the plaintiff to show a complete written agreement; and it can be no more thrown upon the defendant to supply the defects in the agreement than to supply the want of an agreement.

But this is not the case of a contract as charged in the bill, and admitted in the answer. But where another and a different one is set up, under such circumstances, the plaintiff must establish his case by *legal proofs*, showing himself entitled to the relief prayed for: Payne *v.* Blackburne, 3 Ves. Jr. 39, 890; 1 Fonb. 167, 89. This he has failed in doing, and his bill must be dismissed; but without prejudice to his right to proceed at law for the recovery of damages, if he thinks fit to pursue that remedy.