Bryan Ingram *et al. vs.* Wm. G. Little.

---

No. 27.—BRYAN INGRAM *et al.* plaintiffs in error *vs.* WILLIAM G. LITTLE, defendant.

[1.] An instrument purporting to be a deed, which when made is incapable of having any legal operation, can not become afterwards a valid deed, by being completed and delivered by a stranger in the absence of a party, acting under a parol authority ; and can only be completed by a third person, acting under written authority under seal.

[2.] A deed duly signed, sealed and attested, but without any grantee named and without the amount of the purchase money stated—these being left

blank—is inoperative as a muniment of title, and can not be completed by a third person in the absence of the grantor, without authority under seal. Such instrument is admissible, however, in evidence, to show color of title in the party claiming under it.

[3.] Exceptions to the admissibility of testimony on the ground that it is illegal, without specifying wherein it is illegal, held to be insufficient.

[4.] The sayings of a party in possession, who is proven to be tenant under a landlord, are not admissible against the title of his landlord, except as evidence of his repudiation of the relation of landlord and tenant, and not for that purpose without bringing home to the landlord notice of his sayings.

Ejectment in Crawford Superior Court.    Tried before Judge Johnson, March Term, 1853.

This was an action to recover possession of land, brought by William G. Little against Bryan Ingram and others.    The plaintiff introduced a grant from the State to John B. Adair for the land in question; and a deed dated 19th Dec. 1833, from Adair to himself.    The deed was objected to as showing on its face that several portions of it, viz: the name of the grantee; the amount of the consideration; a part of the date and the county when executed, were written in different ink and hand-writing from the body of the deed.    The deed purported to be "signed and sealed" in the presence of three witnesses, to wit: Wm. Adair, James Anderson J. I. C., and Whitman H. Adair.

To explain the insertions in the deed, the testimony of Whitman H. Adair was introduced, who stated that the paper had been sent to him at Milledgeville with the several places in question left blank; that it was brought by Mr. James Anderson, one of the witnesses to the execution, with a letter from John B. Adair, requesting that Anderson and the witness would consummate the bargain for the sale of the land, and fill up the blanks, which they did, and W. H. Adair then signed it himself as a witness, and the deed was delivered to Wm. G. Little by James Anderson, as the agent of John B. Adair.    The witness further stated that he had heard John B. Adair, some years afterwards when the deed had been sent witness, attached

to some former interrogatories, acknowledged on seeing the document, that the same was his act and deed.

To this testimony, and to the deed itself, defendants objected on the ground that the authority to the witness and Anderson to fill up the blanks was in parol, and that consequently their action was unauthorized by Law. The Court admitted the testimony and held the deed to be good as part of the chain of title, and also as color of title to support adverse possession.

The plaintiff then introduced as a witness Joshua Tennison, who testified that in 1833, Thomas Little, the father of plaintiff, went into possession of the land, claiming no title, but professing to hold under Wm. G. Little; that he continued in possession until he was dispossessed by the Sheriff in 1842. To this testimony defendants objected, on the ground that the same was illegal, which was overruled by the Court.

The plaintiff having closed, the defendants introduced sundry Justice's Court *fi. fas.* against Thomas Little, under which the land had been levied on as his property and sold; and also the Sheriff's deed to E. Webb, and deeds from Webb down to Ingram, the defendant, now in possession. Defendant then offered the evidence of James Hobbs and E. Evans, to the effect that Thomas Little had told them, while in possession of the land, that it was his, and that his son had bought it for him, which was objected to by plaintiff and ruled out by the Court. The testimony being concluded, counsel for defendant requested the Court to charge the jury:

That the deed from John B. Adair to W. G. Little, although it might have been good at first, might become fraudulent as against creditors of Thomas Little, by being concealed, and not recorded within a reasonable time; and if the jury believe from the evidence that the deed was not recorded in a reasonable time, then the deed is fraudulent and cannot be made the foundation of a recovery in ejectment. Again, if W. G. Little failed to give notice of his title, by recording the same, or in some other public manner, until the judgments under which the land was sold were obtained, that he cannot now set up his title against a purchaser at Sheriff's sale of the land in dispute,

without actual notice of the title of W. G. Little, provided more than twelve months intervened between the taking of said deed and the sale by the Sheriff:

That if the land would have been found subject to the executions under which the defendants purchased, had W. G. Little claimed it (the land) under the levy, that the purchaser took a good title:

That if the jury believe that W. G. Little was guilty of any fraudulent conduct, by failing to spread his deed upon the records of the county, or otherwise, he cannot recover:

That if Thomas Little had seven years adverse possession of the land before the sale by the Sheriff, that the defendants took a good title at the Sheriff's sale, and plaintiff cannot recover; and the question of adverse possession is a question for the jury:

If John B. Adair was not in possession of the land at the time he sold to W. G. Little by deed, and any other person was in possession holding adversely, or not holding under Adair, that the deed to W. G. Little is void, and cannot be made the foundation for a recovery in this case; and the question of adverse possession is a question for the jury:

That if W. G. Little, by his neglect to record said deed, or otherwise enabled Thomas Little to perpetrate a fraud by getting credit on the faith that the land belonged to Thomas Little, they should find for the defendants; and in considering this question of fraud, the fact of Thomas and W. G. Little being relations, is a badge of fraud:

That the judgment under which defendants purchased, bears date February, 1841; and the deed was not recorded until January, 1842; and this is a badge of fraud:

That defendants can only be charged with rent from 1846; the time at which, according to the proof, defendants went into possession of the land.

The Court declined to give these instructions, as prayed for, and charged the jury as follows:

This is an action of ejectment, and is instituted to try the title to real estate. In this action, it is a settled rule of law, that the plaintiff must recover by the strength of his own title,

and not by the weakness of that of the defendant.   The Law favors the party in possession, and will not oust him unless the plaintiff shows a paramount title in himself.   The defendants' title may be defective, and yet the plaintiff cannot recover unless he proves in himself a perfect and complete title.

In view of this stern rule, let us now address ourselves to the investigation of the respective titles set up by the parties to this case.   The plaintiff in this case sets up a two-fold title.   He insists First, That he has a perfect documentary title, and Secondly, That if this should be defective, he has a good possessory or statutory title.   This documentary title is this : First, A grant from the State to Adair, of the premises in dispute, and Secondly, A deed of conveyance from Adair to W. G. Little.   If the jury believe from the evidence, that the grant and the deed are genuine, they constitute a perfect title in the plaintiff, and must have a recovery, unless it be successfully attacked by the defendants.   His possessory title, as insisted on by the plaintiff, is in this : He maintains that his deed from Adair, however defective in itself, it may be (for the sake of argument) is color of title ; that Thomas Little went into possession of the land as the tenant of the plaintiff, and that his possession was therefore the possession of W. G. Little; that that possession was unbroken, and continued from 1833 to the date of the sale by the Sheriff, under which the defendant claims.   I charge you, gentlemen, that the deed from Adair to W. G. Little is color of title at the least; and if you are satisfied, from the evidence, that Thomas Little was in possession as the tenant of the plaintiff—subordinate to his title—and that that possession continued from 1833 down to the date of the said Sheriff's sale, or for the period of seven years, it does constitute a perfect statutory title in W. G. Little, and he must have a recovery, unless it be successfully attacked by defendants.   Let us now look into the grounds on which the defendants seek to attack the title of the plaintiff, as thus divulged.   They insist that the deed from Adair to W. G. Little is fraudulent.   1st. Because of the relationship between the Messrs. Little—that of father and son.

2nd. Because the deed was not recorded until 1842.

3d. Because he gave no notice of his deed by recording, or otherwise, prior to the rendition of the judgment, under which the premises in dispute was sold; and that it was incumbent on him to have given actual notice to the defendants, the pur chasers at Sheriff's sale of the existence of his title.

Let us look at each of these points in their order.

1st. It is urged that Thomas Little being the father of W. G. Little, and continuing so long in the possession of the land from the time of his purchase from Adair, is a badge of fraud. In some cases, gentlemen, this relationship, accompanied with possession, is a badge of fraud, as for example, when the parties, in addition to the near relationship, are vendor and vendee. If Thomas Little were the vendor of W. G. Little of this land, either at private or public sale, then would the rule contended for be applicable. Under such circumstances, the relationship of father and son would be a badge of fraud. But do the facts of this case come within this principle? You must be satisfied from the evidence, that they do; and even if they do, you must go further, and inquire whether the possession of Thomas Little is not satisfactorily explained. Was he the tenant of W. G. Little? Did he hold in subordination to the plaintiff, and was his possession consistent with a fair and bona fide title in W. G. Little? If the testimony answers these questions affirmatively, then you cannot infer the least iota of fraud from the relationship of the Messrs. Little.

The 2d and 3d grounds of attack by the defendants upon the deed of Adair to the plaintiff, will be considered together. In their support, they insist:

That the deed from John B. Adair to W. G. Little, although it might have been good at first, might become fraudulent as against creditors of Thomas Little, by being kept concealed, and not recorded within a reasonable time; and that if the jury believe from the evidence, that this deed was not recorded within a reasonable time, it is fraudulent, and cannot be made the foundation of a recovery in ejectment:

That if W. G. Little failed to give notice of his title, by

recording the same, or in some other public manner, until the judgments under which the land was sold were obtained, he cannot now set up his title against a purchaser at Sheriff's sale of the land in dispute, without actual notice of the title to W. G. Little, provided more than 12 months intervened between the taking of said deed and the sale of the Sheriff.

That the judgments under which defendants bought, bearing date Feb. 1841, and the deed not being recorded until Jan., 1842, is a badge of fraud. That if the jury believe that W. G. Little was guilty of any fraudulent conduct, by failing to spread his deed upon the record, or otherwise, he cannot recover. The Law, applicable to these points, may be given in much fewer words. The failing to record a deed is not *per se* evidence of fraud. It matters not that it was not recorded at the rendition of the judgments under which the land was sold. If it was recorded prior to the Sheriff's sale, it was notice to the defendants of an outstanding title, and they purchased at their peril. W. G. Little was not bound to give actual notice of his title. A purchaser at Sheriff's sale, takes nothing but the title of defendant in execution, and he buys under the *maxim caveat emptor*. It is further argued by the defendants, that if W. G. Little, by his neglect to record said deed, or otherwise enabled Thomas Little to perpetrate a fraud by getting credit on the faith that this land belonged to him, the jury should find for the defendants. On this point, I charge you, gentlemen, that W. G. Little cannot be injured by the fraud of Thomas Little; i. e., if Thomas Little pretended that this land was his, and thus obtained credit, without the knowledge or consent of W. G. Little, the latter is not to be affected by it; he cannot be made responsible for the fraud of Thomas Little, unless he was cognizant of it, and aided in its perpetration.— The counsel for defendants further contends, that if the land would have been found subject to the executions under which the defendants purchased, had W. G. Little claimed the land under the "levy, that the purchaser took a good title." This, gentlemen, is correct; but the defendants are now in no better condition than they would have been in under such an issue.

It would have been incumbent on them, as it is now, to have successfully attacked the title of the plaintiff, as now developed, and to show that Thomas Little had a good title. That litigation would have presented the same questions that arise in the case as now disclosed. Little would have had the same rights that he now has, and the case would have required the same process. Let us then examine the title on which the defendants now rely, and would then have to rely. This involves the possessory or statutory title in Thomas Little, which is here sought to be set up. Hence the defendants insist that if Thomas Little had seven years adverse possession of the land before the sale by the Sheriff, that the defendants took a good title at the Sheriff's sale, and cannot recover; and that the question of adverse possession is a question for the jury. This, gentlemen, is the law, and I am now to explain to you what constitutes adverse possession. If the *quo animo*, the mind of the tenant, is to hold the property in his own right, against the claim of others, it is adverse possession. Examine then, closely, the testimony on this point, as to the character of the possession of Thomas Little. Are you satisfied from the evidence, that Thomas Little held possession of the land with a mind to hold it in his own right or as his own, against the claim of W. G. Little? If you believe that he did, then the Statute attaches, and seven years of such possession would have perfected in Thomas Little a good Statutory title against the claim of W. G. Little; and then defendants took a good title by their purchase at the Sheriff's sale. But if from the evidence, you believe that Thomas Little never claimed the land as his own, but held in subordination to W. G. Little, then the Statute of Limitations did not attach, and the possessory title set up by defendants fails.

Defendants further insist that if J. B. Adair was not in the possession of the land at the time he sold it to W. G. Little, and any other person was in possession, holding adversely or not holding under Adair, the deed to Little is void and cannot be made the foundation of a recovery.

This gentlemen, is the law; but here again it is necessary

Bryan Ingram *et al. vs.* Wm. G. Little.

for you to examine closely into the character of Thomas Little's possession.  If you find from the evidence, that although in possession before the sale by Adair to W. G. Little, that he never claimed it as his own, then his possession was not adverse even to the claim of Adair, and the case does not fall within the rule contended for by defendants, and the Statute of '32, Henry VIII. does not apply.  In the progress of this case, much has been said about fraud.  It is proper for the court to instruct you on this subject.  Fraud is never to be presumed. It must be proven, or facts must be proved, from which it may be legitimately inferred.  If you should find for the plaintiff under the law and evidence, it is insisted by defendants that rent can only be charged from 1846, the time at which, according to the proof, the defendants went into possession of the land—by way of mesne profits, the Court is of the opinion, gentlemen, that the rent is chargeable from the date of the Sheriff's sale under which the defendants purchased.  They become entitled to the rents and profits of the land from that time ; and if they did not receive them, it is incumbent on them to show that it was in consequence of some act for which the plaintiff is responsible in order to discharge them from liability.

And the jury having found for the plaintiff, counsel for defendants except to said decisions and charges of the Court, on the following grounds :

1st.  That the Court erred in admitting so much of the testimony of Joshua Tennison, as proved a conversation between himself and Thomas Little, in January, 1833, in relation to the ownership of said land, and the intended purchase of it by W. G. Little; and so much of it as proved that Thomas Little had frequently told witness that the land belonged to W. G. Little.

2d.  That the Court erred in permitting the answers of Whitmill H. Adair and James Ware, and the original deed thereto annexed from John B. Adair to W. G. Little to be read in evidence to the jury—objections being made to the reading thereof by defendants' counsel, on the grounds already stated herein.

3d. That the Court erred in rejecting the answers of James Hobbs, tendered in evidence by defendants as herein set out.

4th. The Court erred in rejecting the answers of Elijah Evans to certain interrogatories as herein set out; and in refusing to permit defendants to read them to the jury.

5th. The Court erred in refusing to charge the jury as requested by defendants' counsel, and in giving the instructions which it did, except so far as the same may conform to the request to charge.

HUNTER, for plaintiff in error.

S. & R. P. HALL, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The great question in this case is upon the validity of the deed. It was duly signed, sealed, attested and written out, except as to the name of the feoffee; the amount of the purchase-money to be paid for the land; and some other things not material. In this condition, it was taken by Mr. Anderson to Milledgeville, and there, in the presence of the purchaser, Mr. Little, he and the brother of the grantor, acting under a parol authority, filled out the blanks and delivered it. Subsequently, Adair, the feoffor, acknowledged in presence of a witness sworn on the trial, that this document was his deed. Our opinion is, that as a muniment of title the deed is void, because the execution was consummated, by filling the blanks by an agent in the absence of the feoffor, acting by authority in parol. We put our decision upon authority, conceding that the books in England and in this country are in "distressing" conflict, and with some misgiving whether reason and common sense do not condemn it. This is, however, just the kind of case, in which it is safest to be guided by the weight of authority. The rule, although a technical one, is single, clear, and easy of observance. If abrogated, the title to property might be left too much to the mistakes of memory, or to the corruptions of

humanity.   Under doubt, *Ch. J. Marshall*, with all his disrel-
ish of technicalities, felt constrained to decide in the same way.
We can well afford to follow when such a lawyer leads.   I
shall not go minutely into a discussion of the authorities.   I
shall only indicate the great land-marks of the question, and
lay down the doctrine to which they guide.   That doctrine is,
that an instrument which when executed is incapable of having
any operation and is no deed, cannot afterwards become a deed by
being completed and delivered by a stranger, in the absence of
the party who executed it, unauthorized by an instrument under
seal.

[2.] The deed in this case, before its completion and deliv-
ery was inoperative, because made to no person.   We say that
it could not become a valid deed by filling the blank with the
name of W. G. Little by Anderson, in the absence of Adair,
who made it, without authority under seal from him.   The only
case in England which sustains the contrary, in a like state of
facts, is *Tereira vs. Evans* decided by *Lord Mansfield*, and
cited in 1 *Anstruther* 228.   The books furnish no satisfactory
report of it.   It is questioned by Mr. Preston, in his edition of
*Shepherd's Touchstone*, and in *Hibblethwaite vs. McMorine*,
is declared not to be law and overruled.   (*Shepherd's Touch-
stone by Preston*, 68.   6 *Mason & Wels* 213, 214.)   The old
writers are with this Court in *Hibblethwaite vs. McMorine*.—
(So also *Markham vs. Gonaston*, 2 *Crokes R.* 676.   *Moore
R.* 547.   *Com. Dig. Fait A.* 1.   *Weeks vs. Maillardet*, 14
*East.* 568.   *Powell vs. Duff*, 3 *Camp* 181.   *Buller's N. P.*
167.)   To the same effect in the United States see *Boyd vs.
Boyd* 2 *N. D. McCord*, 125.   *Perminter vs. Daniel et al.* 1
*Hill* 267.   *Gilbert vs. Anthony*, 1 *Yerg.* 69.   *Byers vs. Mc-
Clanchan*, 6 *Gill & I.* 250.   *Ayres vs. Harness*, 1 *Ohio*, 368.
*McKee vs. Hicks*, 2 *Dev.* 379.   *Harrison vs. Tiernans*, 4
*Rand* 177.)   See American authorities contra in note to *Hib-
blethwaite vs. McMorine*, 6 *M. & W.* 215, 216.   In *Hibble-
thwaite vs. McMorine*, *Park B.* reviews *Tereira vs. Evans*, and
shows what are and are not cases distinguishable from that.—
The case of *Hibblethwaite vs. McMorine* was decided in 1840.

We think it clear that the early and latest cases in England hold an authority under seal necessary. We cannot err, therefore, in holding with them. We cannot doubt as to what is the settled rule of the C. Law, and that is obligatory upon this Court. This question was brought before *Ch. J. Marshall* in the *U. States vs. Nelson & Myers,* and he ruled apparently with some doubt as to the reasonableness of his judgment, upon authority, in favor of the doctrine as I have stated it. He invoked an appeal by expressing the opinion that he would be reversed by the *Supreme Court, U. S.,* but no appeal was taken. (2 *Brockenborough,* 64.) That immaterial blanks in a deed may be filled, upon parol authority, without invalidating it, we do not doubt. Our judgment extends only to the case made in this record. The Court therefore erred in admitting this deed as a muniment of title; but we do not send the case back on that error, because it was admissible to show color of title under it; and as the plaintiff below must, in our judgment, recover on his Statutory title, the cause ought not to go back. Although inadmissible to support title, we hold as the presiding Judge held, that it is admissible as *color of title.*

[3.] The exception to the testimony of *Tennison* was that it was *illegal.* An exception so general, brings no question before the presiding Judge, or before this Court. Neither the Bill of Exceptions nor the assignment, specifies the ground of illegality. We do not know why it was claimed to be illegal, nor upon what principle it was admitted. It does not appear, but that if the objection now made to it in argument had been made in the Court below, it would have been sustained.

Our organic Law requires the grounds of exception to be specified, that the opposing counsel may be notified, and this Court informed of what is claimed to be error. If the exception had been well taken, we should hold the testimony admissible.— When the statements of Thomas Little were made, the title of W. G. Little had not accrued. At that time Thomas Little claimed no title, and was in possession therefore as tenant to the true owner. His admissions that he had no title, were admissible to explain the character of his possession, and for the

same reason his admissions as to his tenancy, under W. J. Little, after he bought the land, were admissable.

[4.] The Court did not err in rejecting the testimony of Hobbs and Evans, who were introduced to prove the sayings of Thomas Little, to the effect that W. G. Little bought the land for him at his request, and that he was the owner. The · plaintiff below, having proven, that Thomas Little was in possession as tenant of W. G. Little; Thomas Little would not be permitted to deny the title of his landlord. His statements as to his own title, certainly would not be evidence against his landlord, without bringing home to him notice of them. With such notice they might go to show a repudiation of his tenancy and a setting up of adverse possession and claim.

The doctrine of registry and notice has no application to this case, and the Court charged correctly as to fraud.

Let the judgment of the Court below be affirmed.