## SMITH *v.* FARMERS MUTUAL INSURANCE ASSO.

It is not essential to the validity of a policy of insurance, which was actu-ally signed by the president and secretary of the company by which it purported to have been issued, that the person who in behalf of the company, after the policy had been so signed and placed in his hands, filled blanks therein so as to make it a complete contract, and who then delivered the same to the insured, should have been clothed with writ-ten authority either to fill such blanks or make the delivery.

Argued July 21, — Decided August 8, 1900.

Action on insurance policy — certiorari. Before Judge Reese. Elbert superior court. November 1, 1899.

*Asbury G. McCurry* and *John P. Shannon,* for plaintiff. *William D. Tutt,* for defendant.

Cobb, J. Smith sued the Farmers Mutual Insurance Asso-ciation of Georgia, in the city court of Elberton, upon a policy of fire-insurance. At the trial, in addition to evidence of the value of the property claimed to have been insured, its total destruction by fire, and notice of loss to the company, followed by a refusal on its part to pay, there was evidence that the plaintiff received from one Brown the paper sued on, signed by the president and secretary of the association. Brown tes-

tified that he was the agent of the association, and as such filled up the blanks in the policy, which had been delivered to him by one Manglebury, and, after the property had been valued by Thomas, who was a director of the association, delivered the policy to the plaintiff, who signed the same as required by the rules of the association. It appeared from the minutes of the association that one Fickett was elected local agent for the county in which the plaintiff's property was located, and that Manglebury was appointed to assist him. The by-laws of the association, which were in evidence, clearly authorized the local agent to appoint assistants, one of such by-laws imposing upon the "agent, or any one appointed by him," certain penalties for insuring buildings of a certain character, and another by-law providing that should the agent "appoint assistants, such assistants shall be responsible to their appointees and not to the Association, which shall hold each responsible for everything done in his name." At the conclusion of the plaintiff's evidence, a motion was made to rule out the evidence as to what had been done by Brown, upon the ground that it appeared therefrom that his authority to fill the blanks in the policy and deliver the same was not in writing. The court sustained this motion, and then, upon motion of the defendant, granted a nonsuit. The rulings just referred to were assigned as error in a petition for certiorari which was filed by the plaintiff; and the case is here upon a bill of exceptions in which a judgment overruling the certiorari is assigned as error. As the effect of the ruling upon the testimony of Brown was to leave the plaintiff's case in a condition where, although the policy of insurance was in evidence, it did not constitute a binding contract with the association, we will deal only with the assignment of error on that ruling, for the reason that if Brown had authority to fill the blanks in the policy and deliver the same, the evidence in behalf of the plaintiff was sufficient to carry the case to the jury. The local agent of the association was undoubtedly authorized to fill blanks in policies and also to deliver them. There is no controversy as to this. It is said, however, that Manglebury is not a local agent. The minutes of the Association show that he was appointed to assist the local agent. This would prima facie clothe him with the same au-

thority as the agent had, at least so far as soliciting insurance and delivering the form of contract prescribed by the Association. If Manglebury be treated as the agent of the association duly appointed, he has under the by-laws undoubted authority to appoint another, being responsible for the acts of his appointee. Can such an appointment be made otherwise than in writing? is the question to be determined in the present case.

It is said that, because the law requires contracts of fire-insurance to be in writing (Civil Code, §§ 2022, 2089), and also that an agency must be created with the same formality as is required for the execution of the act for which the agency is created (Civil Code, § 3002), Manglebury's parol appointment of Brown would not authorize him to fill in behalf of the company the blanks in the policy delivered to him. The contract of insurance was contained in a printed policy signed by the officers of the association, delivered first to Manglebury and by him to Brown. All that was necessary to complete the contract was to find some one who was willing to accept the paper upon the terms therein contained, have the property valued in the manner prescribed in the by-laws of the association, and fill in certain blanks in the policy. Such a person was found in the present case. All that Brown was to do was to fill in his name, the description of the property, and the date, after the property had been valued by the director in the manner provided in the rules of the association. Brown did not execute the contract for the association. It was already executed when it was placed in his hands. Blanks in a written instrument may be filled in by parol authority. 1 Gr. Ev. (16th ed.) § 568 a, note 8; Abbott's Tr. Ev. (2d ed.) 504, § 34, and cases cited. Does the rule just referred to apply in a case where the contract evidenced by the writing is valid only when it is in writing? In *Ingram* v. *Little*, 14 *Ga.* 173, it was held that: "A deed duly signed, sealed, and attested, but without any grantee named and without the amount of the purchase-money stated — these being left blank — is inoperative as a muniment of title,' and can not be completed by a third person in the absence of the grantor, without authority under seal." In the opinion Judge Nisbet says: "We put our decision upon authority, conceding that the books in England and in this country are in

'distressing' conflict, and with some misgiving whether reason and common sense do not condemn it." In *Drumright* v. *Philpot*, 16 *Ga.* 428, Judge Lumpkin said that he yielded a reluctant assent to the ruling in *Ingram* v. *Little*, and then called attention to the fact that the doctrine announced had been repudiated by Lord Mansfield, and that Chief Justice Marshall had expressed himself dissatisfied with the extent to which it had been carried. In *Brown* v. *Colquitt*, 73 *Ga.* 59, it was held that where several criminal recognizances were to be given, and the same surety agreed to sign all of them, and did so, some of them being filled out at the time, and some of them having the name of the obligee and the amount blank, which were filled in by the sheriff under parol authority so to do from the surety, the bond was not invalid, but was binding on the surety. It is to be noted in this case that the contract of the surety, being one to answer for the default of another, belonged to that class which the law requires to be in writing in order to be binding. The case of *Ingram* v. *Little* is expressly referred to in the opinion, and the doctrine therein announced virtually repudiated. In *Weaver* v. *Carter*, 101 *Ga.* 213, Mr. Chief Justice Simmons says, in effect, that the decision in *Ingram* v. *Little* was practically overruled in *Brown* v. *Colquitt*. The ruling now made is in perfect accord with the latter case, which seems to be in line with modern decisions. It may be safely said, in view of the foregoing, that the doctrine announced in *Ingram* v. *Little* is not, at this time, to be regarded as the law of this State. It was erroneous to hold that the policy was invalid because Brown did not have written authority to fill the blanks and deliver the same.            *Judgment reversed.    All the Justices concurring.*