## BRANDON v. PRITCHETT.

1. There is no statute in this State requiring the authority to make the memorandum required by the statute of frauds to be in writing, and such authority may be conferred by parol.

2. A parol ratification of a contract for the sale of land, made by one without authority assuming to act for the owner, is valid and binding upon the owner, provided the person assuming to act as agent in behalf of such owner signed a memorandum which in its terms complied with the provisions of the statute of frauds, which showed upon its face that it was executed in behalf of the owner.

ATKINSON, J., dissenting. 1. An agency for the sale of land, not created upon a valuable consideration, nor coupled with an interest in the land, may be revoked upon the mere volition of the principal at any time before the sale is effected. If the agent, by another, submits the property to a proposed purchaser, who agrees to buy upon the terms offered, but, before any written contract is made or any part of the purchase-money is paid, the principal revokes the authority to sell and notifies the agent, who in turn notifies the proposed purchaser, no subsequent negotiations between the agent and the purchaser would bind the principal.

2. Such power of sale as just described, though expressed in writing, may be revoked by parol.

3. An executory contract for the sale of land is within the statute of frauds as adopted in this State, and to be binding must be in writing.

(a) An agency to execute such a contract is required by the Civil Code, § 3002, to be in writing.

(b) Express ratification of such an act must be of equal solemnity with that required for the delegation of the original authority necessary to authorize the act in advance of its execution.

(c) An executory written contract for the sale of land by an assumed agent did not become ratified by the mere verbal statement of the owner to the pretended purchaser, after knowledge of the writing by the assumed agent, to the effect that he had decided to make the deed, and would on the following day execute the same.

(d) There was no evidence sufficient to require the defendant to execute a deed to the plaintiff, and the court did not commit error in directing a verdict for the defendant.

Argued February 21,—Decided August 17, 1906.

Petition for specific performance. Before Judge Lewis. Laurens superior court. January 25, 1905.

*Peyton L. Wade* and *Daley & Bussey,* for plaintiff.

*James B. Sanders* and *W. C. Davis,* for defendant.

COBB, P. J. Brandon brought an action against Pritchett, praying for the specific performance of a contract for the sale of a described parcel of land. The judge directed a verdict for the de-

fendant, and Brandon excepted. The case of the prevailing party, taken in its most favorable light, may be thus stated: Pritchett in a writing signed by him authorized Grier to sell a parcel of land at a stated sum, the authority to sell to continue for three days only. Before any contract of sale was made by Grier, Pritchett revoked the authority. The revocation was by parol. After the revocation but within the three days, Grier made a contract with Brandon for the sale of the land, and signed in his individual name a memorandum reciting that he had sold the land to Brandon as the agent of Pritchett, which memorandum, so far as its contents were concerned, would be a sufficient compliance with the statute of frauds. Within the three days, and after the signing of this memorandum by Grier, Pritchett was approached by an attorney representing Brandon, and informed of the contract which Grier had made, and presented with a deed with the request that he sign it. At the time the deed was presented there was an offer to make a tender of the amount of the money specified in the memorandum signed by Grier, which was the same amount specified in the original paper conferring authority upon Grier to make the sale. Pritchett waived the tender of the money and agreed that the matter should stand as if a tender which was legally complete had been made. Pritchett declined to sign the deed at that time. On the next day, or the next day but one, the attorney for Brandon approached Pritchett and told him that he had a check for the amount of the purchase-money, and was ready to pay it over if he would sign the deed, and Pritchett said, "I have concluded that I will sign the deed. I will go to your office in the morning." This statement by Pritchett that he would sign the deed on the following day was within the three-day limit fixed in the writing which conferred the authority to sell upon Grier. Pritchett thereafter refused to sign the deed, and has never signed it.

The general rule of the common law was that an agent might be appointed by parol. Judge Story said, in 1839, that it was absolutely indispensable to the exigencies of commercial business that the rule should be as stated, for otherwise the most ordinary transactions would be greatly embarrassed, if not obstructed. Story on Agency (9th ed.), § 47. If this was true at that day, how much more true is it at the present time. If no one could sign for another a check or promissory note, or bill of exchange, or accept

the same or indorse such papers, or sell or buy goods, or write a letter, or procure a policy of insurance, unless authorized by a writing, the operations of the business world would be retarded at every step. There were a few exceptions to this general rule. One was, that where the act required a writing under seal, the authority to do the act must generally be conferred by an instrument under seal. But there are even exceptions to this exception. There was also another exception to the general rule, founded upon the strict notions of the old common law; and that was that an agent of a corporation must ordinarily receive his appointment to do any act for the corporation by an instrument under the common seal of the corporation. But this exception has been greatly relaxed in modern times. The statute of frauds requires certain contracts to be in writing, but there is no provision in that statute requiring the authority of an agent to make the contract to be also in writing. The general rule in England as well as in America was and is, that, although a contract for the sale of land must be in writing, an agent may be appointed by parol to make the contract, the general rule being that, unless the statute expressly require the authority to be in writing, an agent may be authorized by parol to make a contract for the sale of land. Mechem on Agency, § 89; Browne on Statute of Frauds (5th ed.), § 370; Wood on Statute of Frauds, 778-786; 1 Reed on Statute of Frauds, § 377.

In some States statutes have been passed which require the authority of an agent to make a sale of land, or other contracts within the purview of the statute of frauds, to be in writing. In the absence of such a statute the common law prevails; and while the contract for the sale of land, to be enforceable, must be in writing signed by the party to be charged, or by some one duly authorized by him, the authority of the agent to sign the writing may be created by parol. If one assumes to represent another when he has no authority, or, having a limited authority, exceeds its limits, when the person in whose behalf the act is done repudiates the act he is not bound. But if with full knowledge of all the circumstances he approves the act, he is bound just as if authority had originally been given to the person assuming to act as agent. It is, however, the general rule that the act of ratification must be of the same nature as that which would be required for conferring the authority in the first instance. If sealed authority was indis-

pensable, sealed ratification must be shown. If written authority was required, written ratification must appear. Mechem on Agency, § 136. If there is any law requiring the creation of the agency to be in writing, a parol ratification of the agency would not be sufficient. Mechem on Agency, § 144. In the present case the evidence authorized a finding that Pritchett had ratified in parol the unauthorized writing made by Grier to sell his land. Grier assumed to act as the agent for Pritchett, after his agency had been revoked. The writing therefore goes for nothing, unless there was a ratification. Whether Pritchett would be bound by the parol ratification depends upon whether there is any statute in this State requiring the authority of an agent to make the memorandum required by the statute of frauds to be conferred in writing. If there is no such statute, the rule of the common law, which allowed the agent to be appointed by parol, is still the law of this State. There is no statute in this State changing the common-law rule. *Smith* v. *Insurance Asso.,* 111 *Ga.* 737; *Watson* v. *Brightwell,* 60 *Ga.* 212. The code declares, "The act creating the agency must be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency is created. A corporation may create an agent in its usual mode of transacting business, and without its corporate seal." Civil Code, § 3002. This section did not have its origin in a statute of this State. It appears for the first time in the Code of 1863. It is to be construed as a codification of the existing law, unless there are words in the section which imperatively demand a construction which would change the rule in force at the time the code was adopted. *Mitchell* v. *Ga. & Ala. Ry.,* 111 *Ga.* 760. There is no language in the section which can be properly construed to change the existing rule of law, except that contained in the last sentence in regard to the appointment of agents by corporations. The language of this sentence is so clear and unequivocal that there can be no doubt that it was intended that the common-law rule before mentioned, in reference to the appointment of agents by corporations, should no longer be of force in this State. The first paragraph of the section is a simple and concise statement of the rule of the common law in reference to the creation of agents; that is, that if the law requires an instrument to be under seal, the authority to execute the instrument must be made by an instrument

under seal. If the law requires, in the performance of an act, a writing attested by a witness or witnesses, then the authority to do the act must be conferred by a writing executed with the same formality. The words in parenthesis, which in effect declare that the creation of an agency need be executed with no more formality than the act itself requires, clearly indicate that the framer of this section had in mind the common law when the section was penned. For there were writers upon the common law who had laid down the rule that an agent or attorney to do any act, no matter what it might be, must be authorized by an instrument under seal; that is, that the authority to act for another must be by an instrument under seal without reference to the formality required for the act itself. Judge Story calls attention to the utterances of these writers, and pronounces the rule thus stated to be manifestly incorrect. Story on Agency, § 46. The framer of this section of the code clearly intended, by the use of the words in the parenthesis, to indicate that it was his purpose to codify the true common-law rule, and to repudiate in express terms the rule which Judge Story refers to as having been laid down by common-law writers, and which he pronounces incorrect. If the section of the code be taken in its literalism, without reference to its history, it may be that a construction could be placed upon it which requires an agency to do a written act to be in writing. But the sections of the code not having their origin in the statutes of this State, but simply coming into the law as part of a codification, can never be safely construed except in the light of their origin. We do not think that the section in question, properly construed, changes the common-law rule in reference to the creation of an agency to make a memorandum required by the statute of frauds. Such being the case, the ratification of an unauthorized writing which itself complies with the terms of the statute, is binding, although the ratification be by parol. The court erred in directing a verdict for the defendant.

*Judgment reversed. Fish, C. J., absent. Evans, J., concurs. Lumpkin and Beck, JJ., concur dubitante.*

ATKINSON, J., dissenting. In a suit for the specific performance of an alleged contract for the sale of land, the evidence showed the following: The defendant, the owner of the land in question, gave written authority, good for three days from date, to one Grier, a member of the firm of Hightower, Grier & Co., engaged in the

real estate business, to sell the lot of land at a stipulated price. There was no consideration for the writing, and no interest in the land claimed by the agent, Grier. On the evening of the same day on which the paper was given, the defendant sent a messenger to Grier, requesting that the paper be returned, and stating that he, the defendant, did not wish to sell the land. Grier replied that he had delivered the paper to his partner, Hightower, who, he suspected, had already negotiated the trade. It appeared that Hightower had in fact found a purchaser, the plaintiff in the case, who had agreed to the terms of the sale as contained in the writing given Grier by the defendant, and also to pay a certain sum to Hightower, Grier & Co. as commission. A short while after this agreement, which was oral, Grier appeared and informed Hightower and the plaintiff of the message which the defendant had sent, withdrawing his consent to sell the land and requesting a return of the paper. The plaintiff, however, contended that the matter had been concluded, and insisted upon the execution of the agreement as made; and to this end, an attorney-at-law was secured and a paper drawn up which in substance declared that Grier, acting under the authority conferred upon him by the defendant, had completed a contract for the sale to the plaintiff of the land in question, and that the defendant, upon the timely payment of the purchase-money, would make the plaintiff good and sufficient warranty titles to the land. This paper was signed by Grier and witnessed, and is the basis of the present action. At the time such "contract" was drafted, the plaintiff gave as a "partial payment on the trade" his check for one hundred dollars, payable to Hightower, Grier & Co., the same being entrusted to the attorney at law. On the following day (which was within the limit of time specified in the original authority to sell) the plaintiff in person made a tender of the purchase-money to the defendant; but the latter at that time refused to accept the money or sign the deed, giving, however, no final answer as to what he would do about it. There was testimony, which was not unquestioned, to the effect that shortly after the refusal of the defendant to sign the deed, he stated to the attorney that he had decided that he would sign it; but this he never did. When the evidence was all submitted, the court directed a verdict for the defendant, and the plaintiff excepted.

1. This is where the plaintiff seeks to compel the defendant to specifically perform a contract which he alleges was executed in behalf of the defendant by an agent having authority to bind the defendant.   Under the evidence it is shown that the defendant by a letter authorized Grier at a named price to sell certain land within a specified time.   Grier, through another, within that time had offered the land to the plaintiff, who had agreed to buy.   Before the payment of any part of the purchase-money, or reducing the contract to writing, defendant sent a verbal message to Grier, notifying him that he did not wish to sell, and demanding the return of the letter.   After this notice, Grier informed the plaintiff thereof, but the plaintiff insisted that the trade was made; and thereupon counsel was called upon to prepare a contract which Grier, the agent, signed and delivered to the plaintiff, who then at the request of Grier delivered a check for part of the purchase-price into the hands of the attorney at law to await the execution of a deed by defendant.   The suit now is to compel the defendant to execute a deed in accordance with the contract which Grier signed. Under these facts, it will be seen that the question is not as to any right which Grier may have, but is solely as to what right has the plaintiff.   If the defendant had power and did revoke the authority of Grier to sell before the plaintiff acquired legal rights against the defendant, then it follows that the subsequent dealings between Grier and the plaintiff were nugatory so far as the defendant is concerned.   We may then consider whether the defendant had the right to terminate the agency.   In considering this question, we will bear in mind that the agency was not one coupled with an interest in the property, nor was it created upon any valuable consideration, or as a part of any security.   It was a mere voluntary proposition to allow Grier to sell within a specified time at a fixed price.   Such an agency could have been terminated by expiration of the time, or by accomplishment of the purpose, or by subsequent agreement between the parties, or, among other methods, by revocation by the principal without the consent of the agent.   In the latter case there could be circumstances under which the agent personally might be wronged, and for which he would have his individual redress against the defendant, but that would not affect a third party dealing with the agent after notice that the authority had been withdrawn, and consequently need not be considered in

this case. "As the authority of an agent to act for his principal depends entirely upon the will of the latter, as it is only for the principal's benefit and in his behalf that the agent should exercise such authority, the agent should not be permitted to exercise it any longer than the principal so wills, in the absence of special circumstances giving the agent such a right. . . Where an authority is given to an agent to sell property of any kind, and the power is not coupled with an interest, as we shall presently see, or is not given for a valuable consideration, such authority may be revoked at any time before the completion of the sale." 1 Clark & Skyles on the Law of Agency, § 157. See also § 169c, which is as follows: *"A fortiori* an authority conferred by a writing not under seal may be dissolved by parol. Where, under an agreement by a creditor to accept from his debtor, in payment of the debt, property at an appraised value, appraisers are appointed, their authority may be revoked as in the case of a submission to arbitration, and such revocation may be made orally, though the appointment was in writing but not under seal. The demand by the principal for the return of a written power under which an attorney in fact was acting, and its surrender without any further instructions, is a revocation of the power." See also, in this connection, Civil Code, § 3003; *Wilkins* v. *McGehee,* 86 *Ga.* 766; *Ray* v. *Hemphill,* 97 *Ga.* 566. In this court it has been held: "Where money is paid by A into the hands of B, to remain at the disposal of C, the right to that money continues in A until B *gives* and C takes credit for it, or B actually pays it to C; up to this period, B is the agent of A only, and A may countermand the authority to make the payment; in the same manner as a person who sends another to pay money may stop him before he arrives at the place where it is to be paid, and require him to deliver it back." *Trustees of Howard College* v. *Pace,* 15 *Ga.* 486 (2). See also the following other cases where the bailee was entrusted with funds to pay to another, and the authority to pay was revoked before executed: *Phillips* v. *Howell,* 60 *Ga.* 411; *Cox* v. *Reeves,* 78 *Ga.* 543; *Burke* v. *Steel,* 40 *Ga.* 217; *Smith* v. *Peacock,* 114 *Ga.* 691, and cases cited. "To constitute a power coupled with an interest, . . there must be an interest in the subject of the agency itself, and not a mere interest in the result of the execution of the authority. So an interest arising from commissions or proceeds of a transaction is not an interest which

·will prevent revocation." 1 Am. & Eng. ·Enc. L. 1217-8. See also, to this effect, *Wilkins* v. *McGehee*, supra. Under the facts in ·this case, there is no reason why the defendant, if he desired, should not have revoked the authority to sell.

2. · Having the power to revoke the authority to sell, the evidence· ·shows that the defendant did so. It is stated in 1 Am. & E. Enc. ·L. 1219, that "revocation may be effected in any manner showing the intention of the principal to withdraw his authority either expressly or by implication; even though the authority be in writing or under seal, it is held that it may be revoked by parol." The evidence in this case discloses a revocation, and also the fact that ·after notice thereof from defendant, and before any part of the purchase· money was tendered by the plaintiff, or ·any ·written contract was. entered into between the plaintiff and Grier, the latter told the former of the revocation. This · should have resulted in an abandonment of further efforts between· Grier and the plaintiff, and ·did render of no effect all their subsequent actions. See McEwen *v.* Kerfoot, 37 Ill. 530. In that case, it was said: "A .party was employed as an agent to sell certain real estate belonging to his principal. The agent negotiated a sale as directed, by a verbal agreement, which the principal afterwards repudiated. Subsequently the agent executed a written instrument to the purchaser, as evidence of the sale, upon ·the terms stipulated in the prior verbal agreement. *Held,* that when the agent found his principal ·had repudiated the sale, although the repudiation may have been improper, his functions as an agent, so far as regarded that sale, were at an end, and· he had no right afterwards, under pretense of protecting the purchaser, or to embarrass his principal, to give the purchaser the written contract." Parol revocation of an agency .created in writing is authorized by common law (Clark & Skyles on the Law of Ag. § 169b etc.), and we have no statute changing the rule.

3. As we have seen, the agency was revoked before anything was :done thereon to obligate Pritchett to Brandon.· When Pritchett revoked the agency, Grier's powers were completely at an end. He could neither execute a contract in the name of Pritchett for the sale of the property, nor accept for him any part of the purchase- price. · Therefore, unless ·Pritchett afterwards ratified what Grier, ·without authority, had done for him, he did not become bound to

execute the deed. It becomes material, therefore, to consider whether there was a ratification by Pritchett of the sale as made and reduced to writing by Grier. It is not, and could not under the evidence, be contended that there was any ratification by implication. The sole ground relied on is express ratification by the verbal statement of Pritchett after notice of the written contract which he was called upon to ratify. The verbal statement was to Brandon's attorney, and was to the effect that he, Pritchett, had determined to make the deed, and on the following day would call upon counsel for Brandon and sign the same. It was a mere parol declaration unattended by any consideration or other act tending to the injury or advantage of either party. The question then presented is, will this parol declaration accomplish a ratification of the written contract, thereby taking the transaction out of the operation of the statute of frauds, and render the agreement enforceable by suit for specific performance? To determine this question, we may only inquire whether the power to make such contract as Grier entered into with Brandon could have been delegated by parol. For it stands to reason that, if the original power would not have been binding unless in writing, the express ratification relied on in this instance would fail for the same reason. The solemnity of the one should be commensurate with that of the other. Both are employed to accomplish the same result. There is no difference between them except that the one precedes the act to be done, and the other follows the act after it has been accomplished. Both are aimed at fixing the liability upon the principal. There is no sound reason to support the proposition that one should be in writing, and that the other may rest in parol; no reason why the one should be required to be supported by the higher, and the other by the lower character of proof. The law would be nugatory in effect if it provided that the original power should be delegated in writing, yet allowed a mere express parol declaration, unattended by acts amounting to an estoppel, to dispense with the previous written authority. In the case of Long v. Poth, 37 N. Y. Supp. 672, the following proposition is laid down: "Ratification is equivalent to original authority, and nothing more; and where the statute requires the original authority to be in writing, it would, on principle, require the ratification to be made with equal ceremony;" citing Haydock v. Stowe, 40 N. Y. 370, 371; Whitlock v.

Washburn, 62 Hun, 374; 17 N. Y. Supp. 60; Stetson v. Patten, 2 Me. 360; McDowell v. Simpson, 3 Watts. 129; Parrish v. Koons, 1 Pars. Eq. Cases, 95; Videau v. Griffin, 21 Cal. 389.   In Judd v. Arnold, 31 Minn. 432, the court said: "A ratification by the principal of the not properly authorized act of the agent must be by an act of the character required for the original authority.   Where that must be in writing, the ratification must also be in writing. Browne on Statute of Frauds, § 17; Fitch, Real Est. Ag. 57; McDowell v. Simpson, 3 Watts, 129; Lawrence v. Taylor, 5 Hill, 107, 113; Ingraham v. Edwards, 64 Ill. 526; Holland v. Hoyt, 14 Mich. 238.   To permit an oral ratification would, in many cases, let in the very evils which the statute aims to exclude."   In McDowell v. Simpson, supra, under a statute declaring that "all leases . . . created by parol . . shall have the form and effect of leases . . at will only," the court, in construing a lease made by parol, said, "Notwithstanding, however, this lease for seven years was made without authority, it was still in the power of the plaintiff to ratify and confirm it: and this brings us to the second question, has he done so?   It is not pretended that he ever did so by writing; and although he may have done it by parol without writing, yet it is obvious that such confirmation could give to the lease no greater force or effect than if he had made it himself originally by parol without writing; which would, according to the express terms of the act, have given it the force and effect of a lease at will and nothing more."   In the case of Ragan v. Chenault, 78 Ky. 545, it is held that "an agent can not bind his principal as surety for another, unless his authority so to do be in writing (Gen. Stat. p. 252), and a subsequent parol ratification by the principal of such act of his agent can not make the original signing effective."   For other authorities to the same effect, see Mechem on Ag. § 136; Clark & Skyles on Ag. § 133; Huffcut on Ag. (2d ed.), § 40(2); Hawkins v. McGroarty, 110 Mo. 546; Dispatch Line v. Mfg. Co., 12 N. H. 205; McCracken v. San Francisco, 16 Cal. 623; Palmer v. Williams, 24 Mich. 329; Kozel v. Dearlove, 144 Ill. 23.   We may then put the case at bar upon the proposition as to whether Pritchett could be bound by an authority to Grier to sell the land delegated only by parol, for, if not, then, by force of the reasoning in the authorities cited, he could not be bound by mere parol ratification.   It is well settled that at common law such power could

have been delegated by parol authorizing Grier to negotiate a sale of land, and to execute with the purchaser a contract, not under seal, binding the vendor to' execute a deed conveying the property. Clinan v. Cooke, 1 Sch. & Lef. 22; 9 Rev. Rep. 3; Coles v. Trecothick, 9 Vesey Jr. (Sumner's ed.) 234; Mortlock v. Buller, 10 Ib. 292; 2 Kent's Com. (14th ed.) 613; Story on Ag. (9th ed.) § 50; Browne on Statute of Frauds (5th ed.), § 370; Long v. Hartwell, 34 N. J. L. 116; Clark & Skyles on Ag. § 169 (b, c). It is also equally well recognized that at common law the contrary is held to be true where the thing to be done is to be executed under seal, such as the conveyance of land by deed. Hawkins v. McGroarty, 110 Mo. 550, and cit. So if we had only the common law to deal with, the proposition would not be open to debate; for unquestionably the contract which Pritchett executed, being one not in fact executed under seal nor required by law to be so executed, authority could have been delegated by Pritchett in parol authorizing the same, or, after the execution of the contract, it could have been ratified by parol. But by our statute we have amendments to the common law. If we look to the English statute on the subject of frauds, 29 Charles II, c. 3 (Cobb's Dig. 1127), we will see that there is no reference therein made to the manner of the creation of agencies. Those statutes, being of force in England prior to 1776, were brought to this country, and, being consistent with our institutions, were adopted as a part of our laws, and have found way into our code and have become binding as statutory law in Georgia. The common law of England of force at the time above indicated, so far as consistent with our institutions, has also become binding upon us by adoption, except as changed by express statute. For the reason suggested, it will be seen that, unless the common-law rule has been changed by statute, this case will be controlled by the common law. It is well recognized that the common law relating to the manner of creating agencies has been changed by statutes in various States, and the text-writers, while recognizing the common law to be as already stated, deal particularly with the subject as modified by statute. See, in this connection, Clark & Skyles on the law of Agency, § 133, where it is said: "In some of the States it is expressly provided by statute that where a contract is required to be 'in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized,' such

authority by an agent must also be in writing. From this it follows that where an agent has, without authority, executed such a contract, a ratification thereof must also be in writing, in the absence of some element of equitable estoppel. Thus, where the statute requires that authority to make a lease of lands for a longer period than a certain number of years shall be in writing, such a lease by an unauthorized agent can only be ratified by the owner in writing. A parol ratification of such a lease would give it no greater force or effect than if the owner had himself leased it by parol, which would be to create an estate at will." See also Story on Ag. (9th ed.), § 50, where it is said: "Even where a statute, such as the statute of frauds, requires an instrument to be in writing in order to bind the party, he may, without writing, authorize an agent to sign it in his behalf, *unless the statute positively requires that the authority should also be in writing.*" Authorities to the same point may be multiplied, but it is unnecessary to cite others. This brings us to the question of what changes, if any, have been made in Georgia. Section 3002 of the Civil Code, which by the adoption of the Code of 1895, has all the force of a statute (see *Cen. R. Co.* v. *State,* 104 *Ga.* 831), provides: "The act creating the agency must be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency is created." Section 2693, par. 4, is as follows: "To make the following obligations binding on the promisor, the terms must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized: ... Any contract for the sale of lands, or any interest in or concerning land." Are these statutes applicable to the case at bar? The answer must depend upon the thing to be done. It was to execute an executory contract for the sale of land. If Pritchett in propria persona had attempted to execute the contract so as to make it binding upon himself, by the express language and requirement of § 2693 it must have been in writing and signed by himself; for the contract is one for the sale of land and the contract concerns land. Are not the terms of the statute broad enough to comprehend an executory contract for the sale of land? The answer to the question is that the plain meaning of the words will admit of no other construction. The contract, although executory, being a promise to do something in the future, is nevertheless a contract

between parties able to contract, based upon a sufficient considera-
tion, and binding the respective parties to do a particular thing.
It is for the sale of something and relates to something. The
thing sold and the thing to which it relates is land. By no in-
genuity could the conclusion be escaped that the contract is con-
templated by the statute. The greater reason would be that a con-
tract of this kind is exactly what was contemplated in the section
of the code referred to; for it is provided·in other·sections of the
code that deeds and mortgages and deeds to secure debt must be in
writing,·and if contracts of that character were the only kinds of
contracts which it was intended by the legislature should be re-
duced, to writing in order to make them binding, it would have been
altogether unnecessary to have enacted the statute embodied in
§ 2693 of the code. So we may regard it as not controvertible that
executory contracts for the sale of land are contemplated by the
plain and unambiguous language of the statute already quoted.
We therefore see what Pritchett should have done if he had at-
tempted in person to bind himself to make a conveyance of this
land. But suppose he had desired to execute the executory con-
tract for the sale of land by the agency of another. How should
he have authorized the other to act for him? To answer this ques-
tion we look to § 3002 of the code, which deals directly with the
proposition. This statute differs from the common law as to the
manner of creating agencies. It is not the scheme of the act to
specify by name the various agencies contemplated therein, or to
specify what may or may not be done under the powers severally
authorized, because it does not specifically name any particular one.
But that it is intended to apply to all agencies for all purposes
is manifest from the broad language of the act. To have under-
taken to deal more specifically would have brought confusion, and
possibly, by omission to provide for certain cases, would have failed
to accomplish the object of the law. But to deal generally, and
apply the rule to all agencies, by reference to the formality re-
quired by law in the execution of the contract to be made, reduces
the legislation to greatest simplicity. The authority intended to
be delegated was to execute a contract in writing, not under seal,
for the sale of land. Inasmuch as the contract for the sale of land,
as we have already seen, must be in writing, it must necessarily
follow that the agency created for the purpose of·making such con-

tract must also be in writing. In other words, *writing* is one of the *formalities* required by the statute to be observed in the creation of an agency for making contracts for the sale of land. The statute, § 3002, is so plain in its terms that it is hardly pardonable to offer to construe it. If it should not be applicable to the creation of agencies like the one at bar, it could never be applied with reason to any other kind. It would be a mere matter of judicial speculation or arbitrary rule to hold that the act was intended to be applied to any particular kind of agency and not to another. Such ruling would be contrary to the language, the spirit, and the scheme of the act; for by its terms it applies to all agencies and requires that each be created in a particular way, to wit, with the same formality as the law requires for the act intended to be accomplished. It is difficult to say how a statute could be better framed to meet all the conditions that could arise in the creation of agencies. That *writing* is one of the formalities contemplated by the statute is directly ruled in the case of *Duke* v. *Culpepper, 72 Ga.* 845. In that case the question was upon the execution of a mortgage. The court said: "This mortgage had necessarily to be in writing, and to be duly executed by the party to be bound thereby, or some one lawfully authorized;" citing Code of 1882, § 1955, which is § 2724 of the Code of 1895. And further: "A verbal mortgage would not be valid." And further: "The act creating the agency must be executed with the same formality as the law prescribes for the execution of the act for which the agency is created;" citing Code of 1882, § 2182, which is the same as § 3002 of the Code of 1895. The court then says: "If a party is to execute a mortgage by an agent, it follows from this that the agent's authority must be in writing." We may safely say that writing is as much one of the formalities to be observed in the execution of a contract for the sale of land, or in the execution of an agency delegating to another authority to make an executory contract for the sale of land, as the act of signing, or as any of the descriptive averments tending to make the contract certain. They are all directed against the dangers of leaving any of the things agreed to be done resting in parol. In the case of *Watkins* v. *Harris, 83 Ga.* 683, where the authority of one to enter a credit on a promissory note for the maker so as to create a new promise from which the statute of limitations should run, was involved, the court said: "But the whole

matter as to a new promise might as well be left to the testimony of witnesses, as the agent's authority to make an unsigned entry." This expression was used by Judge Bleckley in construing and applying § 2182 of the Code of 1882, which is § 3002 of the Code of 1895, which we now have under consideration. That this section of the code as a statute has all of the binding effect of an original act of the legislature was settled in the case of *Central Ry. Co.* v. *State,* 104 *Ga.* 831. In that case it was directly ruled that "the intention of the act of December 16, 1895, adopting the present code, and making the same of force as the code of Georgia, is to enact into one statute all the provisions embraced in that code." It is unnecessary to quote further from that case, but it may be important to call attention to the fact that the act of 1893, p. 119, conferred power upon commissioners "to codify and arrange in systematic and condensed form the laws now in force in Georgia, from whatever source derived." In pursuance of the authority delegated by that act, the commissioners compiled the present code. After this was done, the result of the labors of the commissioners was reported to the legislature; whereupon that body passed another bill, which was approved December 16, 1895, adopting the code. In construing the adopting act, this court made the ruling above quoted. So we may take it that whatever may have been the common law, and that whatever may have been the rulings of this court before the adoption of the Code of 1895, the law which now binds us on the subject under consideration is the statute law quoted from the code. All reason demands the interpretation which we have placed upon the two statutes, §§ 3002 and 2693, and no other application can be made without violence to the law. The judiciary can not take them physically from the books; and so long as they remain, their provisions are too lucid and mandatory to be disregarded by the courts. It may be said, therefore, under § 3002, if the thing to be done is required by law to be executed under seal, the agency to do the thing must be executed under seal; where the thing to be done is required by law to be executed in writing, though not under seal, the agency must be executed in writing, though not necessarily under seal; where the thing to be done is not required by law to be done under seal or in writing, the agency may be created by parol.

In view of the manner in which the Code of 1895 was adopted,

it is not material to a discussion of this case to consider the older rulings of this court upon the questions which formerly involved the manner of creating agencies; for in those cases the rulings were put, not upon the statute of Georgia, but upon the common law. The language of § 3002 first appears in the Code of 1863, and has appeared, without alteration, in each of the subsequent codes down to the present. In a few instances the language which now·appears in § 3002 of the code was interpreted by the court, and in each case where it was interpreted the court adopted the view that writing was one of the formalities contemplated by the language. The instances referred to are the cases of *Duke* v. *Culpepper,* supra, *Watkins* v. *Harris,* supra, and *Moore* v. *Moore,* 103 *Ga.* 523. In this connection it may be noted that the case of *Foster* v. *Cochran,* 89 *Ga.* 466, is one where an agent made an entry of credit on a promissory note in the name of the maker of the note; and it was held that "*inasmuch as an agent's authority to execute a promissory note in the name of his principal need not be in writing,* the authority to renew or extend such note by a new promise need not be in writing, but may be created verbally and proved by parol evidence." This case seems to recognize that writing was one of the formalities essential in the creation of an agency, if the thing to be done was required by law to be in writing. The case was decided on demurrer, and it was alleged in the petition that the credit was entered "under the [parol] direction and by the authority" of the maker, and that the agent signing the name of the maker "was duly authorized." For all that appears the principal may· have stood by and personally directed the signing of his name. That such could be done, unless the provisions of the statute positively forbade, see *Moore* v. *Moore,* supra. The law of principal and agent would not really be involved. It would be the act of the principal himself. But the ruling is not placed upon an interpretation of the statute as embodied in the Civil Code, § 3002. On the contrary it is expressly stated in the headnote that the ruling is put upon "the general tenor of judicial opinion inferable from several cases in the Georgia Reports." By reference to all previous cases from which it was possible to make any such inference, it will be seen that the decisions of the court in each instance were ruled in contemplation of the common law, and that there was no thought of applying the statute. The case of *Black* v. *Holland,*

102 *Ga.* 523, was reviewed by this court in *Moore* v. *Moore,* supra, and reaffirmed, the court placing its ruling upon the application of a statute similar in character to the provisions of the statute now under consideration, and declaring that "the statute is not. one of limitation; it is a law of evidence having for its object the avoidance of the uncertainties to which parol evidence is exposed." The court further says: "By the language of the statute, the entry of credit must be either in the handwriting of the debtor himself, or, if not in his handwriting, subscribed by himself, or some one lawfully authorized by him to do so     This statute is imperative, admits of no exception, and the court has no power or wish to go beyond its plain letter." There is a long line of decisions, not hereinbefore mentioned, which hold to the effect that an agency to execute a contract under seal must be created under seal. See *Ingram* v. *Little,* 14 *Ga.* 173; *Drumright* v. *Philpot,* 16 *Ga.* 428; *Rowe* v. *Ware,* 30 *Ga.* 278; *Pollard* v. *Gibbs,* 55 *Ga.* 45; *McCalla* v. *American Freehold Co.,* 90 *Ga.* 113; *Overman* v. *Atkinson,* 102 *Ga.* 750. While these cases, upon that ruling, are in harmony with the statute as now embodied in § 3002 of the code, they need not be referred to further than to say that they were all adjudicated before the adoption of the code, and the court placed its decision upon the common law without reference to the statutes now before us.

· The facts in the case of *Smith* v. *Farmers Mutual Ins. Asso.,* 111 *Ga.* 737, which has been adjudicated since the code was adopted, were such as to authorize the application of § 3002, and the court ruled in principle contrary to the doctrine here maintained; but it will be seen from the opinion in that case that the court placed its ruling, not upon the statute, but squarely upon the common law, quoting Greenleaf on Evidence and Abbott on Evidence as authority for the right to empower by parol an agent to fill out blanks in a writing already signed by the maker. The opinion in that case, beyond controversy, shows that the court did not consider §§ 3002 and 2693(4) as statutory law and apply them to the questions involved, and the case is not to be taken as a construction of those statutes; nor was the case one involving a contract for the sale of land. We are not bound by its rulings, and can not ignore the statutes.

In support of the contention that the authority to execute an executory written contract for the sale of land need not be in writ-

ing, the majority have cited in their opinion the case of *Watson* v. *Brightwell*, 60 *Ga.* 219, where it is said: "The employment of an agent by the principal to sell land need not be in writing, but the agent may recover for services rendered in effecting the sale by virtue of a verbal contract." This citation is no support for the proposition, because it is seen at a glance that the case was not one where it was contended that the agency created was one to execute an executory contract for the sale of land. It was merely an employment of an agent by a principal to do a particular service for him, and the question was one as to payment for the services after they had been rendered. The ruling there made bears no relation to the case under consideration. While in the field of obiter dicta, an expression more in point would have been that of Justice Bleckley in *Dobson* v. *Dickson*, 62 *Ga.* 639, where it is said: "The creditor is not the agent of the debtor in entering a credit upon the evidence of debt—certainly not without express authority in writing."

In 1852 and before there was any statute in Illinois on the subject, the Supreme Court of that State, under the common law, ruled that while a deed to land was required to be in writing, yet an executory contract for the sale of land was not required to be in writing, and accordingly that an agent could in parol be empowered to execute such a contract. Johnson v. Dodge, 17 Ill. 433. But afterwards, in 1869 (Acts 1869, p. 363; 2 Rev. Statutes of Ill. by Starr & Curtis, pp. 1997 and 1998), it was enacted that "no action shall be brought to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them, for a longer term than one year, unless such a contract or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully *authorized in writing,* signed by such party. . ." After the adoption of this act, it was ruled in Bissell v. Tany, 69 Ill. 184, that the act applied to an executory sale of land by an agent, and that the agent's power under the writing would be strictly construed, and it was recognized that such an authority could be created by letter not under seal. In a still later case, Kozel v. Dearlove, 144 Ill. 23, it was ruled: (1) "If an agent, having written authority to sell lands of his principal, sells the same at a less price, or on different terms than he is authorized, he must have

a new and further authority, which must also be in writing under the statute of frauds. A verbal consent of the principal for him to sell on other terms is invalid under the statute." (2) "The owner of lots, in writing, authorized his agent to sell the same at certain prices and upon certain terms. The agent made a sale at a less price and on more favorable terms, and communicated that fact to the principal, who assented to the sale and verbally directed the agent to execute the contract, which he did. *Held,* that as the agent's authority to make such a contract was not in writing, the same was void and not enforcible." The Illinois statute quoted above substantially contains with approximate precision the substance of §§ 3002 and 2693(4) of our code, and the application made by the Supreme Court of that State is in accord with the view herein expressed. In other words, they note the same change by statute from the common law which we have observed.

Finally, from all that has been said, it follows that the verbal statement by Pritchett to counsel for Brandon did not amount to a ratification of the written contract, which Grier had executed without authority; and there being neither authority to Grier nor ratification of his act, Pritchett was not bound to execute the deed, and the court did not err in directing a verdict for the defendant. A majority of the court having reached a contrary conclusion, and finding myself unable to agree with the doctrine announced by it, I am constrained, in dissenting, to present the principles which, in my judgment, should have controlled its decision.